N. K. TRACY ET AL. V. A. W. HARBIN ET AL.

Decided October 28, 1905.

### 1.—Homestead Claim—What Title Will Support.

It is not necessary that the claimant of a homestead exemption should have fee simple title thereto. A conveyance in fee simple with condition subsequent, or an equitable interest will support such claim.

### 2.—Same—Abandonment.

Facts considered and held to show the acquisition of a new and an abandonment of the old homestead.

Appeal from the District Court of Eastland. Tried below before Hon. J. J. Butts, special judge.

*Earl Conner,* for appellant.—Where parents own in fee simple a tract of land and enter into an executory contract in writing with one of their children that if the child will care for and provide them with the necessaries of life, suitable to their station, throughout the remainder of the lives of each and both of them, that then the title to said land shall vest in fee simple in said child, the parents specially reserving their homestead rights in said land until their death, such child has no homestead rights in said land until full compliance, on his part, of the contract, such as will in an injunction suit, under a plea of homestead for himself, defeat the sale of his legal or equitable title interest in said land for the payment of his just debts. Hampton v. Gilliland, 56 S. W. Rep., 572; Wilson v. Fields, 50 S. W. Rep., 1024; Texas Constitution, art. 16, sec. 52; Freeman, Cotenancy and Partnership, secs. 49, 64 and 86.

Where a debtor owns or has an interest in the title to a tract of land in one State and uses and occupies the same as a homestead for himself and family, and voluntarily leaves or abandons the same and voluntarily removes with his family to another State or Territory, and there acquires other lands which he uses, occupies, enjoys and improves as a homestead, his interest in the former is subject to the payment of his debts as long as he resides upon the latter acquired homestead. Brooks v. Chatham, 57 Texas, 31; West End Town Co. v. Griggs, 93 Texas, 451; Moss v. Smith, 68 S. W. Rep., 533; Slavin v. Wheeler, 61 Texas, 654; McElroy v. McGaffin, 68 Texas, 208; McMillan v. Warner, 38 Texas, 410; Harmsen v. Wesche, 32 S. W. Rep., 192; Reece v. Renfro, 68 Texas, 192; Sharp v. Johnston, 19 S. W. Rep., 259; Gibbs v. Hortenstein, 10 Texas Ct. Rep., 547; Marler v. Handy, 88 Texas, 421; Adams v. Kaufman, 32 S. W. Rep., 712; Speer, Law of Married Women, secs. 246, 247, 248; Mills v. Brown, 69 Texas, 244; Dobkins v. Kuykendall, 81 Texas, 183; Revised Statutes United States, secs. 2289, 2290, 2291, 2296; Acts of Congress of March 2, 1895; Acts of Congress, June 6, 1900; Acts of Congress, March 3, 1901; President's Proclamation of July 4, 1901; Thompson on Homesteads and Exemptions, secs. 30-36 (ed. 1878).

No brief for appellee.

SPEER, ASSOCIATE JUSTICE.—This was an injunction suit instituted by the appellees against appellants to restrain the sale upon execution of a quarter section of land situated in Eastland County, alleged to be the homestead of appellee A. W. Harbin. Upon a finding by the trial judge in favor of the homestead exemption, the temporary injunction was made permanent and appellants have brought the case before us for review.

We construe the instrument of writing, under which appellee claims his homestead interest, to be a conveyance in fee simple with condition subsequent, and therefore ample support for his homestead claim. But if it were not, his equitable interest would undoubtedly be sufficient to support such a claim, title to the fee in such case not being absolutely essential. (Dotson v. Barnett, 16 Texas Civ. App., 258; 41 S. W. Rep., 99; Smith v. Chenault, 48 Texas, 455; Silverman v. Landrum, 56 S. W. Rep., 107; Swearingen v. Bassett, 65 Texas, 267; Speer, Law of Married Women, sec. 252.) The seventh assignment of error, complaining that appellee presents no title sufficient to support the homestead claim, is therefore overruled.

The eighth assignment of error insists that the facts show an abandonment of the homestead by appellee prior to the levy of appellants' execution, and complains that the court therefore erred in perpetuating the injunction forbidding its sale. The statement from appellants' brief, which is in no manner controverted by appellees, requires us to sustain this assignment. Appellee A. W. Harbin lived on the land in controversy with one or both of his parents from 1888 until 1901. He married in April, 1896, by which union he had four living children on November 10, 1901. During the year 1901, he learned of the opening up for settlement of the lands of the United States in Oklahoma Territory. He made three trips to the territory and on July 11, 1901, drew Claim No. 1000. He employed the services of a land agent in securing a location and on August 14, 1901, made a homestead application and affidavit for 160 acres of land in Kiowa County, Oklahoma Territory, which land was awarded to him by the United States. He moved his family and most of his household effects from the land in controversy on November 10, 1901, and onto the 160 acres of land in the territory. He made substantial improvements on the Kiowa County farm, fencing it, digging a well, constructing a house, erecting a tent, and plowing some of the land. He purchased a team and resided there until May, 1902, at which time he relinquished his claim to the government in favor of another for a consideration of $1,750. Appellee Harbin himself testified: "I had read the papers about the opening of the country and saw that I had an opportunity of securing some land up there, and that is why I went. I came back to Eastland County a third time and then again returned with my family to locate on the place in the Territory. I abandoned the place in the Territory about May 5, 1902. The reason I came back was that at the time my father was old and feeble and did not want to live there, being dissatisfied, and wanted me to bring him back, and the place in Eastland County was the only place I had to bring him to. When I left Eastland County, I left voluntarily. I was not run off nor told to go. After I got to the Territory it was

my intention to acquire title to the land that was awarded to me. I had read the United States laws and knew what was necessary. I knew that it was necessary for me to cultivate, improve, and reside on the land fourteen months, when I could give the government $1.25 per acre and acquire title. I knew that I had to occupy, cultivate and improve the land for five years, when I could acquire title without paying the government anything. I came back to Texas because my father was dissatisfied and wanted me to bring him back. I think, if he had been satisfied, I would have remained there fourteen months, if I could have gotten the money to pay for the land, but had I not been able to have gotten the money, I would have remained on the land for five years. I would have made the best of the situation. I went there to get the land and acquire title to it if I could. Yes, I made the affidavit just read to me. The statements contained in the affidavit which you have just read are true, and they were true at the time I made them." The affidavit referred to reads as follows: "I, Augustus W. Harbin ............ do solemnly swear that I am over twenty-one years of age and the head of a family ............ That my application is honestly and in good faith made for the purpose of actual settlement and cultivation and not for the benefit of any other person ............ And that I will faithfully and honestly endeavor to comply with all the requirements of law as to settlement, residence and cultivation ............ That I am not acting as the agent of any person ............ That I did not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for myself, and that I have not directly made and will not make, any agreement or contract in any way or manner with any person ............ by which the title I may acquire from the government of the United States should inure in whole or in part to the benefit of any person except myself ............" He further testified: "I left Eastland County for the Territory of Oklahoma for the purpose of obtaining land from the United States government." Mrs. A. W. Harbin testified substantially as did her husband. This, in the main, is the testimony bearing upon the issue of abandonment, save that appellee A. W. Harbin testified that he never at any time intended not to return to his Eastland County farm, and it was shown that he rented the same subject to the right to immediately repossess himself of it. We think, on the whole, that it clearly appears that appellee Harbin, by the acquisition of another homestead, in Oklahoma Territory, abandoned the land in controversy as a homestead, and that the injunction forbidding its sale upon execution should be dissolved. There is no substantial controversy upon this issue, since appellee himself testifies that the statements contained in his affidavit of application in Oklahoma Territory, to the effect that he was applying for the land there not for speculation but in good faith for a home for himself, were and are true. This being the case, and having followed the application with an actual settlement upon, and use of, the land for the purpose of a home, he necessarily abandoned any former homestead. He could not have two homesteads at the same time. From an examination of the whole testimony, it appears that he never, at the time he moved from the land in controversy and settled in Oklahoma Terri-

tory, had any fixed intention of returning save in the contingency that his father should become dissatisfied in the territory. And it also appears that at the date of the levy his father had not become dissatisfied, but was still living with him on the farm in the Territory, and his dissatisfaction and the appellee's intention to return were manifested afterward.

The case of Baum v. Williams, 41 S. W. Rep., 840, is much relied on by appellee to sustain the judgment of the trial court. The meager statement of the facts, upon which the verdict and judgment in that case were based, clouds the real decision in obscurity. Yet it is clear from reading the opinion that there was in that case a substantial conflict in the testimony with respect to the intention of Williams, the owner, upon the question of abandonment of his homestead, when he applied to purchase the State school land. The conclusion embraces the finding that there was sufficient evidence to show that his affidavit, contained in the application to purchase school land, was untrue. Here, as we have before shown, the affidavit made for the purpose of acquiring a new home is expressly admitted to be true, and the transaction in the Territory has every indicia of the acquisition and use of property for homestead purposes. Upon these conclusions, the judgment of the District Court perpetuating the injunction is reversed, and judgment here rendered in favor of appellants, dissolving the same.

                                        *Reversed and rendered.*