## SMOCK v. FARMERS' UNION STATE BANK.

No. 397.     Opinion Filed December 21, 1908.

(98 Pac. 945.)

1.  **STATUTES—Repeal by Revision.** A statute revising the whole subject-matter of former acts, containing in the main the provisions of the former acts, and evidently intended as a substitute for them, although it contains no express words to that effect, operates to repeal the former acts.

2.  **SAME—General Repealing Clause.** The insertion, in an act intended as a revision and substitute for former acts, of the clause, "all acts and parts of acts in conflict herewith are hereby repealed," does not change the general rule that such revising act repeals all the former acts for which it is intended as a substitute.

3.  **BANKS AND BANKING—Statutory Provisions—Repeal by Revision.** The act of the Legislature, approved May 26, 1908 (Sess. Laws 1907-08, p. 125, c. 6, art. 1) entitled "An act relating to banks and banking and declaring an emergency," is a revising act, and was intended as a substitute for all the former acts relating to banks and banking, and repeals the provisions of sections 242-300, of Wilson's Rev. & Ann. St. 1903. and the four acts of the Legislature, approved, respectively. March 16, 1903 (Sess. Laws 1903, p. 83, c. 41), March 13, 1905 (Sess. Laws 1905, p. 84, c. 7). December 17, 1907 (Sess. Laws 1907-08 p. 145, c. 6, art. 2,) and February 12, 1908 (Sess. Laws 1907-08, p. 152, c. 6, art. 3).

4.   **SAME—Repeal of Incorporation Law—Effect.** The repeal of a general incorporation law, providing for the incorporation of banks, should not be construed, in the absence of express provisions, as intended to repeal the charters of corporations formed under such law previous to its repeal when the manifest purpose of the repealing act is to revise the former laws upon the subject and to substitute a new law extending the provisions of the old, supplying omissions, and perfecting its details, without changing its general policy or interfering with corporations formed under it.

5.   **BANKS AND BANKING—By-Laws—Statutory Provisions.** Wilson's Rev. & Ann. St. 1903, sec. 962, requiring every corporation formed under said chapter to adopt a code of by-laws within one month after the filing of articles of incorporation, does not apply to a banking corporation.

(Syllabus by the Court.)

*Error from District Court, Logan County; A. H: Huston, Judge.*

Mandamus by the Farmers' Union State Bank against H. H. Smock, Bank Commissioner. Judgment for plaintiff, and defendant brings error. Affirmed.

This is an application for a writ of mandamus filed by defendant in error, who was plaintiff in the lower court. The trial court, upon plaintiff's application, granted an alternative writ of mandamus. To the alternative writ plaintiff in error, defendant below, filed his return, and the case was tried before the court, who, after hearing evidence, rendered judgment granting the peremptory writ.

The facts, in so far as they are important to the consideration of this case, are that Wm. G. Botts, E. L. Garnett, and W. S. Overstreet, all of whom are residents of the state, executed and filed on the 27th day of April, 1908, articles of incorporation, whereby said persons agreed and contracted for the formation of a corporation to be known as the "Farmers' Union State Bank," defendant in error. On the same date a certificate of incorporation was issued by the Secretary of State. Prior to the filing of the articles of incorporation, the capital stock in the sum of $10,000 was fully subscribed and paid up and was so certified in the articles

of incorporation. After the issuing of the certificate of incorporation by the Secretary of State no further action was taken by the incorporators until the 13th day of August, 1908, at which time the stockholders proceeded to organize the corporation, elect officers and adopt by-laws. W. G. Botts and E. L. Garnett were respectively elected president and cashier. On the 28th day of August, 1908, the plaintiff corporation, acting through its cashier, filed with defendant, H. H. Smock, as bank commissioner of the state, a certified statement showing the names of its stockholders, their residences, the amount of stock subscribed and paid in by each. It also filed on the same day a certified list of its directors and officers, and the oaths of office of said directors, and a certified copy of the by-laws adopted by the corporation and of the minutes of the first meeting of said corporation held on the 13th day of the same month. Plaintiff had on the 17th day of August, 1908, deposited the full amount of its capital stock with the Security National Bank of Oklahoma City, for which it received a certificate which was also duly certified by the cashier of said Security National Bank and filed with the defendant at the same time as the other papers mentioned herein, and on the same day plaintiff tendered to the State Banking Board the sum of $300, to be deposited to the credit of the Depositors' Guaranty Fund, which was refused by the board. Plaintiff also filed with defendant the names of banks it desired designated as its reserve agents, and requested that defendant issue to it a certificate certifying that it had been duly organized according to law and authorizing it to transact a general banking business. Defendant refused to designate reserve agents for plaintiff and to issue a certificate as requested.

The judgment of the trial court, in awarding the peremptory writ, directed that defendant approve the banks named and submitted to it by plaintiff as reserve agents or to name and approve some other banks as reserve agents, and further commanded him to forthwith issue to plaintiff a certificate showing that it had been organized, and its capital stock paid in as required by law.

and that it is authorized to transact a general banking business. The matters alleged in defendant's answer to the alternative writ and established by the evidence, in so far as they are important to his defense, will be stated in the opinion.

*Charles West, Atty. Gen.,* and *W. C. Reeves, Asst. Atty. Gen.,* for plaintiff in error.

*Chas. H. Garnett* and *Geo. E. Swisher,* for defendant in error.

HAYES, J. (after stating the facts as above). At the time the articles of incorporation of the Farmers' Union State Bank, defendant in error, were filed with the Secretary of State, the laws governing the incorporation and organization of state banks were contained in chapter 8, on Banks and Banking, of Wilson's Revised and Annotated Statutes of Oklahoma of 1903, and in four certain acts of the Legislature, one approved March 16,. 1903 (Sess. Laws 1903, p. 83, c. 4), one approved March 13, 1905 (Sess. Laws 1905, p. 84, c. 7), one approved December 17, 1907 (Sess. Laws 1907-08, p. 145, c. 6, art. 2), and another approved February 12, 1908 (Sess. Laws 1907-08, p. 152. c. 6, art. 3). Section 1 of said chapter 8, *supra,* provides that:

"Any three or more persons, a majority of whom shall be residents of this territory, may organize themselves into a banking association and be incorporated as a bank. * * *"

Section 2 of the act of 1903, *supra,* provides that, when the capital stock of the bank shall be paid up, the president or cashier shall transmit to the bank commissioner a verified statement showing the names and places of residence of the stockholders, the amount of stock subscribed and paid in by each, the bank commissioner shall have power to examine the bank, and shall make such examination within 30 days after the receipt of the statement from the officers of the bank, "and if such bank has been organized as prescribed, and has in all respects complied with the provisions of law, said commissioner shall issue to such bank, under his hand and seal, a certificate showing that it has been organ-

ized and its capital paid in as required by law, and is authorized to transact a general banking business as provided by this act."

After the articles of incorporation had been filed, but before the president or cashier had transmitted his certificate to the bank commissioner as provided by said section 2, the Legislature passed House Bill No. 615, entitled "An act relating to banks and banking, and declaring an emergency," which was approved on May 26, 1908 (Sess. Laws 1907-08, p. 125, c. 6, art. 1). This act contained the emergency clause and became effective immmediately Section 1 of the act provides that:

"Any three or more persons approved by the bank commissioner, a majority of whom shall be residents of this state, may execute articles of incorporation and be incorporated as a banking corporation in the manner hereinafter provided. * * * *"

By this section of the act any three persons desiring to be incorporated as a banking corporation must first be approved by the bank commissioner before the articles of incorporation are filed. No such requirement was made under the law as it formerly existed. It is contended by plaintiff in error that since the bank in this case had not received from him, before the enactment of House Bill No. 615, his certificate to the effect that said bank was authorized to transact a general banking business, it is not now entitled to receive the same because its incorporators were not approved by him before its articles of incorporation were filed, and he alleges in his return that he refuses to approve the incorporators for the reason that the incorporators are without experience in the banking business, and for the further reason that the town of Prague, in which said bank is to be located, has a population of less than 1,000, that there is no indication of a material increase in the population or business of said town, that there are now three banks in said town, and that they are sufficient to meet and are meeting all the demands for banking facilities of the town and of the people of the surrounding country. The effect of plaintiff in error's contention is that the articles of incorporation filed by the stockholders of the bank and the certificate of incorporation

by the Secretary of State have been repealed and all the rights thereunder of the bank as a corporation and of its stockholders have been destroyed by House Bill No. 615. We are therefore led to inquire: First, What was the status of the bank as a corporation at the time of the enactment of House Bill No. 615, and what were its rights under the law at that time; and, second, what was the effect of this act upon the status of the corporation and its rights?

Section 3 of said chapter 8, Wilson's Rev. & Ann. St. 1903, reads:

"The existence of such bank as a corporation shall date from the filing of its charter, from which time it shall have and may exercise the powers conferred by law upon corporations generally, except as limited or modified by this act: Provided, that such bank shall transact no business except the election of officers, the taking and approving their official bonds, the receipts of payments on account of subscriptions to its capital stock, and such other business as is incidental to its organization, until it has been authorized by the bank commissioner provided for hereinafter, to commence the business of banking as hereinafter provided for."

By the terms of this section, the existence of a banking corporation dates from the date on which its articles of incorporation are filed. The contract between the state and defendant in error and its stockholders had its origin and became effective on that date. This section, as well as all other provisions of the statute and of the Constitution relative to banking corporations, became on that date a part of defendant in error's contract—a part of the contract between it and the state. It became on that date a corporation vested with all the powers of a corporation generally, except as provided in said section, to wit: that it should not transact any business except the election of its officers, taking and approving their official bonds, receipting for payments on capital stock subscribed and other business incident to the organization of the bank, until authorized by the bank commissioner to commence the business of banking.

Section 2 of the act of 1903, *supra*, makes it the duty of the

bank commissioner to issue such certificate of authority when the acts required by said section have been performed. The bank's charter and its powers as a corporation do not date from and have their beginning on the date the bank commissioner issued his certificate of authority. The act of the bank commissioner in issuing his certificate is by virtue of the contract between the corporation and the state which contract dates from the date on which the articles of incorporation were filed. The bank commissioner's act in issuing the certificate, instead of being the source of defendant in error's charter as a corporation, is the result of defendant in error's rights under the charter which follow the performance of certain acts by it. The charter contract between the bank and the state is by virtue of the provisions of said section 3 of chapter 8, *supra,* and of section 2 of the act of 1903, *supra,* in part executory; but it is none the less a contract. The effect of the bank commissioner's certificate of authority is that it certifies to the bank that the things required to be done by the bank before it begins the business of banking, have been done, and that under the terms of the contract it is authorized to engage in such business. The defendant in error contends that it has done those things which by its charter it was required to do before beginning the business of banking, and it now demands a certificate of authority from the bank commissioner in accordance with its contract. The power of the Legislature to repeal a charter of a corporation, where by the terms of the charter the power to repeal, amend, or alter such charter is reserved to the Legislature, is not a debatable question. By section 47 of article 9 of the Constitution (section 262, Bunn's Const.), it is provided that the Legislature shall have power to alter, amend, annul, revoke, or repeal any charter whenever in its opinion it may be injurious to the citizens of the state; in such manner, however, that no injustice shall be done to the incorporators. This section of the Constitution has been construed by this court in the case of *Noble State Bank v. Haskell et al., ante,* p. 48, 97 Pac. 590.

The question in this case then is not one of legislative power, but of legislative intent, and we must determine the nature of House Bill No. 615 and its effect upon the former laws pertaining to the incorporation of banks, and the control and regulation thereof. There is nothing in the title of this act to indicate that it is a revising statute, nor is there any expression in the act declaring it to be such a statute; but a careful comparison of this act and its contents with chapter 8, Wilson's Rev. & Ann. St. 1903, and the acts of the Legislature subsequently enacted, discloses that this act is principally a restatement in a corrected and improved form of the laws contained in that chapter and in the subsequent acts of the Legislature. There are, it is true, some material changes, but this does not destroy the nature of the act as a revising act, and it clearly appears from the subject-matter of the act that it was intended to take the place of all the former laws existing upon the subject with which it deals. In *Bartlet et al. v. King,* 12 Mass. 545, 7 Am. Dec. 99, the court said:

"A subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law as well as in reason and common sense, operate to repeal the former."

This language is quoted in Lewis' Sutherland on Statutory Construction, vol. 1, p. 515, as stating the rule to be that the effect of a statute of revision, without express words repealing previous statutes, when it is apparent that the Legislature intended that the new act should cover the entire subject embraced in all the former statutes, is to repeal said statutes, both as to those parts that are repugnant and those parts that are not repugnant to the new act. The act under consideration, however, contains the following repealing clause: "All acts and parts of acts in conflict herewith are hereby repealed." This clause, inserted in acts other than revising acts, neither adds to nor lessens the repealing force of the act. *State v. Yardley.* 95 Tenn. 546, 32 S. W. 481, 34 L. R. A. 656. But when it is inserted in a revising act,

the courts are not uniform in their holding as to its effect. The text on Statutory Construction above quoted states the rule, however, as follows:

"If the new act is intended as a revision and substitute for the former act or acts, the general rule applies, and the former act or acts are repealed *in toto,* though they may contain parts or provisions which are not embraced in the new act and are not repugnant to its provisions." (Lewis' Sutherland on Statutory Construction, vol. 1, p. 522, citing *Attorney General v. Parsell,* 100 Mich. 170, 58 N. W. 839; *The Paquete Habana,* 175 U. S. 677, 20 Sup. Ct. 290, 44 L. Ed. 320; *State v. Carbon Hill Coal Co.,* 4 Wash. 422, 30 Pac. 728.)

House Bill No. 615 covers the entire grounds of said chapter 8 Wilson's Rev. & Ann. St. 1903, and of the four subsequent acts of the Legislature above referred to. It pertains to the same general subject-matter and seeks to accomplish the same general purpose and in the main is a re-enactment of those statutes in the same language, and we are therefore of the opinion that said act was intended by the Legislature as a substitute for all the laws then existing upon the subject-matter dealt with in that act, and that said former laws were repealed by it.

We are now confronted with the question of what effect the repealing of the statute under which defendant in error was incorporated had upon its corporate rights and powers. Section 3 of chapter 8, Wilson's Rev. & Ann. St. 1903, is re-enacted in the new act with the slight modification that the "existence of the bank as a corporation shall date from the filing of its articles of incorporation *and the issuance of certificate of the Secretary of State."* (The italicized words constitute the addition made.) Section 2 of the act of 1903 is re-enacted in section 2 of the new act with a proviso relative to the reorganization of banks and trust companies added. These two sections fix the date on which the existence of a corporation shall begin and prescribe what powers it shall exercise from the beginning and what acts shall be done before it engages in the general business of banking. The pow-

ers of a banking corporation and the things to be done by it after its articles of incorporation are filed are the same under the new act as they were under the former law, and those provisions of the statute giving these rights and powers, having been re-enacted in the revising act, are deemed to be continuous, and the defendant in error lost no rights thereunder unless its charter was repealed. The new act contains no language expressly repealing the charter of defendant in error or the charter of any other bank organized under the former law, and repeals by implication are never favored.

Mr. Thompson, in his Commentaries on the Law of Corporations (volume 7, par. 8305), states the rule to be that:

"The repeal of a general incorporation law will not be construed, in the absence of express provisions, as intended to repeal the charters of corporations formed under it, when the manifest purpose of the repealing act is to substitute a new statute extending the provisions of the old one, supplying its omissions and perfecting its details, without changing its general policy, or interfering with corporations formed under it."

The court, in *Bibb v. Hall and Farley,* 101 Ala. 99, 14 South. 104, says:

"Whether or not an enactment of the Legislature shall operate as a repeal or alteration of a charter, where the power is reserved to alter or repeal, is a question of legislative intent. Repeals by implication are not favored, and it has been held and we think properly, that the repeal of a general incorporation act and the re-enactment of a new one does not affect existing corporations formed under the former act. The object of such legislation would seem, more reasonably and fairly, to be to make provision for future corporations only. The later act will not be held to repeal the former one, unless there is an express intention to do so, or a necessary implication to that effect, arising from the enactment" —citing *Freehold Mut. Loan Ass'n v. Brown,* 29 N. J. Eq. 121; *United Hebrew Benevolent Ass'n v. Benshimol,* 130 Mass. 325; *Donworth v. Coolbaugh,* 5 Iowa, 300.

We therefore conclude that House Bill No. 615 did not repeal defendant in error's charter, and that it had the right to proceed with its organization by electing officers, collecting the

capital stock subscribed, and to have its president or cashier make the necessary certificate to the bank commissioner in the manner prescribed by law, and that it became the duty of the bank commissioner, if he found, after examination, that the law had been complied with by defendant in error, to issue his certificate to it.

Plaintiff in error, however, contends that defendant in error has not complied with the requirements of the statute entitling it to his certificate, in that it failed within one month after its incorporation to adopt by-laws as is provided by section 33, c. 18, Wilson's Rev. & Ann. St. 1903, which, in part, reads as follows: "Every corporation formed under this chapter must within one month after filing articles of incorporation adopt a code of by-laws for its government.  *  *  *" It is uncontroverted that defendant in error was incorporated on the 27th day of April, and did not adopt by-laws until the 13th day of August; but we think that the statute quoted did not apply to the organization of a banking corporation. Until 1897, the law providing for the incorporation, control, and regulation of banking corporations constituted a part of the general statutes on corporations contained in chapter 17 of the Revised Statutes of 1893. Section 2 of article 3 of that chapter required all corporations formed under said chapter to adopt a code of by-laws for its government within 30 days after filing its articles of incorporation. Said chapter, with some amendments, now forms chapter 18, Wilson's Rev. & Ann. St. 1903; but in 1897 the Legislature passed a very long and comprehensive act providing very completely for the incorporation, control, and regulation of banks. Section 62 of that act reads in part as follows:

"Chapter 17 of the statutes of Oklahoma, 1893, in so far as the same provides for and refers to the incorporation of banks, or other associations doing a banking business and receiving deposits shall be and the same is inoperative and void.*  *  *" (Sess. Laws 1897, p. 74, c. 4.)

We therefore think it unquestionable that said section 33 of chapter 18, which was a part of said chapter 18 of the Statutes

of 1893, was repealed in so far as it applies to banking corporations, and that the contention of plaintiff in error that the law required defendant in error to adopt its by-laws within one month after the filing of its articles of incorporation is untenable.

Other contentions were made by plaintiff in error in the trial court, but they are neither mentioned nor discussed in his brief, and it will therefore be presumed that he has abandoned the same.

When the officers of defendant in error transmitted to the bank commissioner their verified statement as provided by law, the duty of the bank commissioner then became: First, to make examination of the bank; second, to ascertain the amount of money paid in on account of its capital stock, by whom paid, and the amount of capital stock of which each stockholder is in good faith the owner; third, whether the bank had complied with the provisions of the law; fourth, if it had been organized as prescribed by law; and, fifth, if he found that all these things had been done, to issue his certificate to defendant in error showing that it had been organized and its capital paid in, and that it is authorized to transact a general banking business. Mr. Merrill, in his excellent work on Mandamus at page 30, defines a "ministerial act" in the following language:

"A ministerial act is one which a public officer or agent is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed."

The duty of the bank commissioner to issue to defendant in error his certificate, when all the things required to be done had been done, is not one within the discretion of the bank commissioner, but is mandatory. The law leaves nothing to his discretion or judgment, but says that he shall issue the certificate. That mandamus will lie to compel a public officer to perform a ministerial duty, one that involves no exercise of judgment or discretion, is too well settled to require the citation of authorities.

The Attorney General, in a very exhaustive brief, has discussed

the powers of the bank commissioner under that portion of House Bill No. 615 which provides that any three persons, approved by the bank commissioner, may execute articles of incorporation and be incorporated as a banking corporation. On the other hand, it has been urged by counsel for defendant in error that this portion of said section is unconstitutional for the reason that it undertakes to delegate legislative power to the bank commissioner. We deem it unnecessary to pass upon these questions. The facts in this case are not that three persons are now seeking the privilege of becoming incorporated as a banking corporation and asking the approval of the bank commissioner under said section 1, but are that a corporation, already formed in compliance with the law as it existed at the time its articles of incorporation were filed and its contract made, alleging it has complied with its contract, is demanding that it receive the certificate to which it is entitled by reason of the performance of the conditions of its contract.

The trial court in rendering judgment for defendant in error found the issues of fact generally in its favor, and there is evidence fairly tending to support the court's findings.

The judgment of the trial court is affirmed.

All the Justices concur.