CADE v. VICKERS *et al.*

No. 1262.   Opinion Filed January 9, 1912.

(120 Pac. 611.)

**HOMESTEAD**—Acquisition—Abandonment.   Same as paragraph 1 of
syllabus in **Northwest Thresher Company v.** McCarroll et ux., 30
Okla. 25, 118 Pac. 352.

(Syllabus by the Court.)

*Error from District Court, Woods County;*
*R. H. Loofbourrow, Judge:*

Action by C. M. Cade against Blanche Vickers and others.
Judgment for defendants, and plaintiff brings error.   Reversed
and remanded, with instructions.

*Stanard, Wahl & Ennis* and *H. A. Noah,* for plaintff in
error.

*E. W. Snoddy,* for defendants in error.

WILLIAMS, J.   This proceeding in error is to review the
judgment of an action wherein the plaintiff in error, as plain-
tiff, sued the defendants in error, Blanche Vickers, Don Vick-
ers, and Florence Westfall, respectively the widow and children
of G. W. Vickers, deceased, to foreclose a lien on certain lots
in the city of Alva, by virtue of a mortgage executed by the said
deceased on the 6th day of June, 1903.   Said decedent, on said
date, for value, executed and delivered to said plaintiff his
certain promissory note, in writing, in the sum of $500, due on
the 6th day of September, 1903, providing for interest, attor-
ney's fees, etc.   Said note was secured by said mortgage, which
was executed by the said decedent.   Said decedent also signed
the name of the defendant in error, Blanche Vickers, his wife,
thereto.

The final affidavit made by the decedent as a homestead
claimant.is in part as follows:

"I, George W. Vickers, having made a homestead entry of
the N. ½ S. W. ¼ and S. ½ N. W. ¼ section No. 25, in town-

ship 6 of range No. 19 W. I. M., subject to entry at El Reno, Oklahoma, under section No. 2289 of the Revised Statutes of the United States, do now apply to perfect my claim thereto by virtue of act of June 6, 1900, of the Revised Statutes of the United States; and for that purpose do solemnly swear that I am a native-born citizen of the United States; that I have made actual settlement upon and have cultivated and resided upon said land since the 28th day of May, 1903, to the present time; that no part of said land has been alienated, except as provided in section 2288 of the Revised Statutes, but that I am the sole *bona fide* owner as an actual settler; that I will bear true allegiance to the government of the United States; and, further, that I have not heretofore perfected or abandoned an entry made under the homestead laws of the United States."

The testimony of said decedent as a homestead claimant, in making his final proof, is as follows:

"George W. Vickers, being called as a witness in his own behalf in support of homestead entry No. —— for N. ½ S. W. ¼ and S. ½ N. W. ¼ Sec. 25, T. 6 N., R 19 W., testifies as follows: Q. 1. What is your name as you wish it to appear in your patent; age, and post-office address? A. George W. Vickers; 52 years old; Hobart, Okla. Q. 2. Are you a native-born of the United States, and, if so, in what state or territory were you born? A. Yes; Ohio. Q. 3. Are you the identical person who made homestead entry No. 9824 at the El Reno, Okla., land office on the 2d day of December, 1902, and that is the true description of the land now claimed by you? A. Yes; N. ½ S. W. ¼ and S. ½ N. W. ¼ Sec. 25, Tp. 6 N., R. 19 W. I. M. Q. 4. When was your house built on the land, and when did you establish actual residence thereon? (Describe said house and other improvements which you have placed on the land, giving total value thereof.) A. The house was built in May, 1903, and established residence on the 28th day of May 1903; frame house, 10x14; 1 door, 2 windows, 60 acres under fence, 35 acres under cultivation, well, cave; valuation, $250. Q. 5. Of whom does your family consist; and have you and your family resided continuously on the land since first establishing residence thereon? (If unmarried, state the fact.) A. Wife and two children; yes. Q. 6. For what period or periods have you been absent from the homestead since making settlement, and for what purpose; and, if temporarily absent, did your family reside upon and cultivate the land during such absence? A. None. Q. 7. How much of the land have you cultivated each season, and for how

many seasons have you raised crops thereon? A. Cultivated 35 acres one season. Q. 8. Is your present claim within the limits of an incorporated town, or selected site of a city or town, or used in any way for trade and business? A. No. Q. 9. What is the character of the land? Is it timber, mountains, prairie, grazing, or ordinary agricultural land? State its kind and quality, and for what purpose it is most valuable. A. Prairie land; most valuable for farming. Q. 10. Are there any indications of coal, salines, or minerals of any kind on the land? (If so, describe what they are, and state whether the land is more valuable for agricultural than for mineral purposes.) A. No indication of coal, salines, or mineral; most valuable for farming. Q. 11. Have you ever made any other homestead entry. (If so, describe same.) A. No. Q. 12. Have you sold, conveyed, or mortgaged any portion of the land, and, if so, to whom and for what purpose? A. No. Q. 13. Have you any personal property of any kind elsewhere than on this claim? (If so, describe same, and state where the same is kept.) A. No. Q. 14. Describe by legal subdivisions, or by number, kind of entry and office where made, and other entry of filing (not mineral) made by you since August 30, 1890. A. None."

The defendant Blanche Vickers, the wife of said G. W. Vickers, testified that she then resided on the said lots in the city of Alva, the property in controversy; that she had lived there about twelve years; that it was then her homestead; that she was residing there on the 6th day of June, 1903, that she moved no property out of the building when she went to reside with her husband on his homestead claim in Kiowa county; that she had always claimed the place in Alva as her homestead; that she had no knowledge of the mortgage in this action being placed on the premises. On cross-examination, she testified that G. W. Vickers was her husband; that he took a claim in Kiowa county; that she lived on the claim about eleven months from some time in the spring (about the middle of June) of 1903; that the house had been built a few weeks when she arrived there. On redirect examination, she testified that she only took a trunk to the Kiowa county homestead, leaving the house in Alva furnished; and that the children remained there, except when away on a visit in the summer.

Florence Westfall, the daughter, on direct examination, tes-
tified that she was going to school in Alva; that she left Alva
on the 26th of June, 1903; and that her mother, Blanche Vickers,
went to her father on the claim in Kiowa county not to exceed
two weeks prior to June 26, 1903.

The case was tried without the intervention of a jury, and a
general finding made in favor of defendant.

The first question essential for determination is as to
whether, on June 6, 1903, the premises in Alva were the home-
stead of the decedent.

In *Northwest Thresher Co. v. McCarroll et ux.*, 30 Okla.
25, 118 Pac. 352, in an opinion by Ames, C., it was held that a
homestead is abandoned by the acquisition of another. In the
opinion it is said:

"In 1904, while this was a homestead, McCarroll filed on
other lands in Woods county under the homestead laws of the
United States. He resided on this homestead a part of the time
until about the 1st of January, 1907, and thereafter continuously
until April, 1908, at which time he made his final proof. His
wife never resided on the Woods county homestead, but con-
tinued to live in Medford, on the property in controversy, al-
though she visited him in Woods county, and he visited her at
Medford. They continued living together as husband and wife,
and neither abandoned the other. We are of the opinion that
under these facts McCarroll abandoned the Medford homestead.
*   *   *   In *Tracy v. Harbin*, 40 Tex. Civ. App. 395, 89 S.
W. 999, Harbin owned a homestead in Texas, but upon the open-
ing of the Kiowa and Comanche reservations in this state, in
1901, he went to Kiowa county, where he filed on government
land, under the homestead laws, making the usual affidavit for
such purpose. After remaining there about six months, he relin-
quished his claim to the government upon receiving a considera-
tion from another, and returned to his home in Texas. In the
opinion the court says: 'This, in the main, is the question bearing
upon the issue of abandonment, save that appellee A. W. Harbin
testified that he never at any time intended not to return to his
Eastland county farm, and it was shown that he rented the
same, subject to the right to immediately repossess himself of
it. We think, on the whole, that it clearly appears that appellee
Harbin, by the acquisition of another homestead in Oklahoma
Territory, abandoned the land in controversy as a homestead,

and that the injunction forbidding its sale upon execution should be dissolved.' "

It follows that the judgment of the lower court must be reversed and remanded, with instructions to grant a new trial and enter judgment in accordance with this opinion.

TURNER, C. J., and HAYS and KANE, JJ., concur; DUNN, J., absent, and not participating.