TICER v. STATE *ex rel.* HOLT, *County Attorney.*

No. 3651. Opinion Filed November 7, 1912.

(128 Pac. 493.)

1. **COUNTIES — County Commissioners — Fees.** The county commissioners, after the close of the session of the Legislature of Oklahoma Territory in 1901 (Sess. Laws 1901, c. 21), were not entitled to compensation of $1.50 per day as overseers of the poor.

2. **SAME—Expenses—Reimbursement.** A commissioner being authorized by the board of commissioners of his county to superintend the laying out or surveying of a road whilst engaged in such business, and being duly authorized thereto, paid in cash out of his personal fund the sum of $5 to a chain bearer, who carried the chain in the survey of such road in said commissioner's district, said sum of $5 being a reasonable compensation for such work. Said commissioner thereafter charged to and collected from his county the sum of $5 as a reimbursement of said amount as expended by him. **Held,** that it was permissible for the board of county commissioners to reimburse him in said amount.

(Syllabus by the Court.)

*Error from Superior Court, Pottawatomie County;* -
G. C. *Abernathy, Judge.*

Action by the State on relation of C. P. Holt, County Attorney, against N. A. J. Ticer. Judgment for plaintiff, and defendant brings error. Reversed in part.

*Edward Howell,* for plaintiff in error.

*C. P. Holt,* for defendant in error.

WILLIAMS, J. The following specifications of error are made by the counsel for plaintiff in error: (1) Were the county commissioners, prior to the going into the effect of the act of May 29, 1908 (Sess. Laws 1907-08, pp. 217, 218), entitled to compensation of $1.50 per day as overseers of the poor? (2) Were they entitled to reimbursement of moneys expended by them when engaged in work directed by the board, and for purposes for which the parties to whom the moneys were paid were entitled to pay from the county?

1. Sections 3645 and 3663, St. Okla. 1893, are as follows:

"3645. The county commissioners of the several counties of this territory shall be the overseers of the poor within their several counties and shall perform all duties with reference to the poor within their respective counties that may be prescribed by law. Every board of county commissioners shall, in discharging the duties imposed by this act, be designated as overseers of the poor. * * * *"

"3663. The overseers of the poor in each county shall be entitled to receive each one dollar and fifty cents per day for each and every day during which they shall be necessarily employed in the discharge of their several duties as such, to be allowed by the board of county commissioners."

These, as sections 1 and 19 of the act passed by the Legislature of 1890 (St. 1890, c. 66) entitled, "An act in relation to the settlement and support of the poor," took effect on December 24, 1890.

Section 2898, St. Okla. 1893, is as follows:

"The county commissioners shall be allowed for time actually and necessarily employed, a *per diem* of three dollars each, and five cents per mile for each mile necessarily traveled in discharge of their official duties."

This, as section 45 of an act passed by the Legislature of Oklahoma Territory 1890 entitled, "An act establishing fees and salaries of public. officers," took effect on December 25, 1890. Section 1 of said act (section 2854, St. Okla. 1893) also provides:

"That the officers and persons herein mentioned shall be entitled to receive for their services only the fees and compensations herein allowed, and no other, except as may be otherwise provided by law."

An act passed March 12, 1897, entitled, "An act to regulate the fees and salaries of county officers and for other purposes, and to repeal articles 1 and 2, of chapter 25, of the Session Laws of Oklahoma Territory of 1895, and section 7 of article 1 of chapter 73, of the Statutes of Oklahoma. Territory of 1893," provides as follows:

"That the officers and persons herein mentioned shall be entitled to receive for their services only the fees and compensation herein allowed, and no other, except as may be otherwise required by law." (Section 1, c. 15, p. 160, Sess. Laws 1897.)

"The county commissioners shall be paid an annual salary, payable quarterly, as follows: In counties of ten thousand population or less, the sum of one hundred and fifty dollars each; in counties of more than ten thousand and less than fifteen thousand, the sum of two hundred dollars each; and in counties of more than fifteen thousand population the sum of two hundred and fifty dollars each. * * *" (Section 61, c. 15, p. 179, Sess. Laws 1897.)

By this act all provisions of law providing compensation for county commissioners were expressly repealed. See section 64, c. 25, p. 143, Sess. Laws 1895.

The Legislature of Oklahoma Territory of 1901 passed an act entitled, "An act for the support of the poor of the several counties of the territory of Oklahoma and to establish and maintain asylums therefor." (Chapter 21, pp. 156, 161, Sess. Laws 1901.)

Section 1 of said act provides:

"The county commissioners of the several counties of the territory of Oklahoma shall be overseers of the poor for their respective counties, and shall perform all the duties with reference to the poor of their said counties that may be prescribed by law."

Section 2 of the same act provides for the purchase of a poor farm and the erection of buildings thereon, and section 3 for the

renting of a suitable place to establish a county asylum or poor farm. Section 4 provides the conditions under which the board may furnish relief to poor and indigent persons residing within the county. Section 8 provides for the employment of some suitable person to take charge of the poor farm or the county asylum; such person to be called the superintendent of the county asylum. This is a comprehensive act relating to the poor and insane of the several counties of the state. The question arises as to whether this act by substitution takes the place of the act of 1890 entitled, "An act in relation to the support of the poor." A repeal by substitution is effected where the latter of two acts covers the whole subject of the first, and plainly shows it was intended as a substitute therefor.

The act of 1901 pertains to the same subject-matter and seeks to accomplish the same general purpose, and in the main is a reenactment of those statutes in the same language except enlarging the plan for the support of the poor of the several counties of the territory. It is clear that said act was intended by said Legislature as a substitute for all the laws then existing upon the subject-matter dealt with therein, and that the act of 1890, relating to the support of the poor, was entirely repealed. *J. W. Ripey & Son v. Art Wall Paper Mill,* 27 Okla. 600, 112 Pac. 1119; *State ex rel. West et al. v. McCafferty, County Treasurer,* 25 Okla. 2, 105 Pac. 992; *Smock v. Farmers' Union State Bank,* 22 Okla. 825, 98 Pac. 945; *Fritz v. Brown,* 20 Okla. 263, 95 Pac. 437.

The act of March 12, 1897, provides an annual salary for the county commissioners, and the fact that, by the repealing of said act of 1890, the compensation of the county commissioners as overseers of the poor at the rate of $1.50 per day was taken away and certain duties relative to their overseeing the poor were continued, in and of itself is no argument against the repeal of the law; for there was no limitation upon the powers of the Legislature of the territory of Oklahoma against reducing the compensation of public territorial officers during their terms.

An officer is not entitled to receive compensation from the state or county unless it is given to him by the Constitution or statute. *Coggeshall v. Conner,* 31 Okla. 133, 120 Pac. 559; *State*

*v. Brewer,* 59 Ala. 130; Throop on Public Officers (1892) sec. 478, and authorities cited in footnote 2. Where compensation is given to an officer by a constitutional or statutory provision, whether by salary or fees or commissions or otherwise, it is in full of all his official services, and he is not entitled to demand or receive any additional compensation from the public for any service within the line of his official duty, although his duties have been increased, or entirely new duties have been added since he assumed office, or, if his compensation consists of fees, although the service is one for which no fee is provided by law. *State v. Brewer,* 59 Ala. 130; *People v. Supervisors of New York,* 1 Hill (N. Y.) 362; *Heslep v. Sacramento,* 2 Cal. 580; Throop on Public Officers (1892) sec. 478, and authorities cited in footnote 2. See, also, *Coggleshall v. Conner, supra.*

2. Paragraph 5 of the agreed statement of facts is as follows:

"That during said time the said N. A. J. Ticer charged to, and collected from, the county of Pottawatomie the sum of $5 upon claims Nos. 1756 and 1597; that the said $5 was paid to said county commissioner as reimbursement to him for money that he paid in cash out of his personal funds to chain carriers for work who were working in the said commissioner's district in the survey of a county road; that said amount of $5 was a reasonable compensation for said work of chain carriers, and said county commissioner was authorized by the board of county commissioners to oversee the survey of the said road."

Section 7757, Comp. Laws 1909 (Sess. Laws 1909, p. 487), provides:

"The right of way for any public road shall be paid for by the township in which such right of way lies; provided where such right of way runs along municipal township lines the cost shall be borne equally by each township. The county commissioners shall certify to the township board the price of such right of way, whether same is fixed by amicable settlement or condemnation proceedings and upon receipt of such certificate the township board shall draw warrants on the proper officers for a sufficient amount to cover such price. The cost incident to any proceedings to obtain right of way, except the price of the land and damages, shall be paid by the county."

In *Allen et al. v. Com'rs of Pittsburg County,* 28 Okla. 773, 116 Pac. 175, paragraph 2 of the syllabus is as follows:

"Section 1659, Comp. Laws 1909, having provided, 'No account shall be allowed by the county commissioners unless the same shall be made out in separate items, and the nature of each item stated, * * * which account so made out shall be verified by affidavit setting forth that the same is just and correct and remains due and unpaid, which account shall be regularly filed with the county clerk five days before the first day of the meeting of the county commissioners,' it is essential that such requirements be complied with in order for such board to acquire jurisdiction to allow same. (b) An account having been made out in separate items, but not in any way having been verified by affidavit 'setting forth that the same is just and correct and remained due and unpaid,' although regularly filed with the county clerk five days before the first day of the meeting of said board, jurisdiction was not acquired so as to allow same."

The judgment of the court in this case is as follows:

"The court further finds from the petition and agreed statement of facts that the defendant paid in cash out of his personal fund the sum of $5 to a chain carrier, who carried the chain in a survey of a county road in the third commissioner's district of Pottawatomie county, and that said amount of $5 was a reasonable compensation for said work, and that the defendant was authorized by the board of county commissioners to oversee the survey of said road, and that thereafter the defendant charged to, and collected from, the county of Pottawatomie the sum of $5 as a reimbursement of the amount of the payment made by him. There appearing no extraordinary condition rendering it necessary for the defendant to pay said sum out of his own funds, the court is of opinion that the defendant could not legally make the county of Pottawatomie his debtor in that manner, and no reason appearing why the person so carrying the chain did not or should not file the claim on his own behalf, the court holds that said claim was improper and that the plaintiff should recover said item. And judgment should be for the plaintiff and against the defendant for $5, the amount of said item."

No contention was made that the claim was not filed by the plaintiff in error in accordance with section 1659, Comp. Laws 1909, which is construed in *Allen v. Com'rs of Pittsburg County, supra,* and it appears that the county would have been liable for

the claim if made out in accordance with the requirement of said section by said chain carrier.

Where the law requires an officer to do what necessitates an expenditure of money for which no provision is made for the supplying him with the cash in hand, he may pay therefor and have the amount allowed him. *United States v. Flanders,* 112 U. S. 88, 5 Sup. Ct. 67, 28 L. Ed. 631; *Kirkwood v. Soto,* 87 Cal. 394, 25 Pac. 488; 23 Am. & Eng. Encyc. of L. (2d Ed.) 388. Before a claim is a valid claim against the county or state, there must be an express provision of law to fix such liability.

It was the duty of the county commissioners to lay out this road. In order to do that, it was necessary to survey the same. In order to have it surveyed, it was necessary to have a chain carrier, and they were authorized to employ and pay such chain carrier. It was permissible for them to empower one of their members to make such employment. *House v. Los Angeles County,* 104 Cal. 73, 37 Pac. 796. The plaintiff in error, having paid the chain carrier who had a valid claim against the county for labor previously performed, was subrogated to the rights of the chain bearer. Throop on Public Officers (1892) sec. 45, p. 51; *Bliss v. Lawrence,* 58 N. Y. 442, 17 Am. Rep. 273; *Stephenson v. Walden,* 24 Iowa, 84.

Section 2408, Wilson's Rev. &Ann. St. 1903, provides:

"That it shall be unlawful for any public officer or deputy or employee of such officer to either directly or indirectly buy, barter for, or otherwise engage in any manner in the purchase of any bonds, warrants or any other evidence of indebtedness against this territory, any subdivision thereof, or municipality therein, of which he is an officer." (Section 2, art. 3, c. 12, Sess. Laws 1899, p. 123.)

This provision, however, does not appear to cover this transaction. The term "or any other evidence of indebtedness against this territory, any subdivision thereof, or municipality therein, of which he is an officer," is *ejusdem generis,* and applies only to bonds, warrants, or other evidence of indebtedness of that character. *Thompson et al. v. Rearick,* 34 Okla. 283, 124 Pac. 951; *Maben v. Rosser et al.,* 24 Okla. 588, 103 Pac. 674.

It follows that the court erred in finding against the plaintiff on the $5 item. The judgment against the plaintiff in error in favor of the defendant in error for the sum of $5 will be here reversed and rendered. As to the judgment against the defendant in error in favor of the plaintiff in error for the sum of $142 and interest, the same will be affirmed.

HAYES, KANE, and DUNN, JJ., concur; TURNER, C. J., absent, and not participating.