SYLVESTER RICH v. STATE.

No. A-9142. March 26, 1937.
(66 Pac. [2d] 950.)

J. Q. A. Harrod and Laynie W. Harrod, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and S. T. Roberson, Co. Atty., for the State.

BAREFOOT, J. The Legislature on April 1, 1919, passed (chapter 60 [63 Okla. St. Ann. §§ 391-393]) an Act entitled "Relating to Narcotic Drugs," the title to the same providing:

"An Act relating to narcotic drugs; prohibiting the selling, giving away, dispensing, manufacture, production, unlawful possession, transportation and unlawful use of narcotic drugs; defining narcotic drugs; providing penalties for the violation of this Act; and declaring an emergency."

The first section (63 Okla. St. Ann. § 391) defined "Narcotic Drugs." Section 2 (63 Okla. St. Ann. § 392) prohibiting the selling, giving away, dispensing, manufacture, production, distribution, concealing, buying, or in any manner facilitating the transportation of narcotic drugs, and providing for registration of certain parties allowed to possess and dispose of same, and how the same may be disposed of by those entitled to handle the same. One part of section 2 is as follows:

"It shall also be unlawful for any person to transport, carry or take from one point within the state to another point within the state, of however short distance, any of the aforesaid narcotic drugs."

Section 3 (63 Okla. St. Ann. § 393) provided the penalty for violation of the act:

"Any person who violates any of the requirements or provisions of this act shall, upon conviction, be deemed guilty of a felony and be fined not less than Five Hundred Dollars nor more than Five Thousand Dollars and shall

be imprisoned not less than one year nor more than seven years, or both."

Section 4 declared an emergency.

This act of the Legislature of April 1, 1919, is now sections 4611 and 4612 of the Oklahoma Statutes 1931 (63 Okla. St. Ann. §§ 392, 393).

The Legislature of 1935 passed what was known as the "Uniform Narcotic Drug Act," which was article 6, chapter 24, of the Session Laws of 1935 (63 Okla. St. Ann. §§ 401-424). The title of this act was as follows:

"An Act relating to narcotic drugs; enacting the provisions of the Uniform Narcotic Drug Act; making definitions; regulating the sale, transportation, disposition, manufacture, compounding, possession, prescription, and administering of narcotic drugs and compounds thereof and making same unlawful except as specifically authorized herein; authorizing same under certain conditions; requiring licenses therefor; prescribing qualifications for such licenses; authorizing suspension or revocation of such licenses; requiring certain forms to be used and certain records to be kept relating to use, handling, and possession of such drugs; requiring the labeling of containers of such drugs; declaring certain places and premises resorted to by drug addicts or used for illegal keeping or selling of such drugs to be a common nuisance; making unlawful the keeping of such nuisance; providing for the seizure, forfeiture and disposition of narcotic drugs unlawfully possessed; providing that certain information shall not be deemed priviliged (sic); making certain acts unlawful; prescribing certain procedure in prosecutions for violation hereof; prescribing penalties for violation of this Act; repealing conflicting laws; and declaring an emergency."

This act passed with the emergency, May 14, 1935.

Section 1 of the act (63 Okla. St. Ann. § 401) is labeled "Uniform Narcotic Drug Act," and gives the definitions of all terms used in the act.

Section 2 (63 Okla. St. Ann. § 402) provides:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this Act."

Sections 3 and 4 (63 Okla. St. Ann. §§ 403, 404) provide for the issuance of licenses for the sale of narcotic drugs.

Section 5 (63 Okla. St. Ann. § 405) provides as to how sales shall be regulated or made.

Sections 6 and 7 (63 Okla. St. Ann. §§ 406, 407) provide for sales upon prescriptions and dispensation of narcotics by physicians, dentists and veterinarians.

Section 8 (63 Okla. St. Ann. § 408) names certain exceptions to this act.

Section 9 (63 Okla. St. Ann. § 409) provides for the records to be kept, etc.

Section 10 (63 Okla. St. Ann. § 410) is with reference to manufacture and wholesalers.

Section 11 (63 Okla. St. Ann. § 411) provides for possession under prescriptions.

Section 12 (63 Okla. St. Ann. § 412) as to common carriers.

Section 13 (63 Okla. St. Ann. § 413) declaring certain places as nuisances.

Section 14 (63 Okla. St. Ann. § 414) for the disposition of forfeited drugs.

Section 15 (63 Okla. St. Ann. § 415) for suspension of licenses upon conviction.

Sections 16 and 17 (63 Okla. St. Ann. §§ 416, 417) that records shall be kept open to inspection.

Section 20 of the act (63 Okla. St. Ann. § 420) provides:

"Any person violating any provision of this Act shall upon conviction be punished, for the first offense, by a fine not exceeding One Thousand ($1,000.00) Dollars, or by imprisonment for not exceeding two (2) years, or by both such fine and imprisonment, and for any subsequent offense, by a fine not exceeding Five Thousand ($5,000.00) Dollars, or by imprisonment for not exceeding three (3) years, or by both such fine and imprisonment."

Section 21 of the act (63 Okla. St. Ann. § 421) provides:

"No person shall be prosecuted for a violation of any provision of this Act if such person has been acquitted or convicted under the Federal Narcotic Laws of the same act or omission which, it is alleged, constitutes a violation of this act."

Section 22 of the act (63 Okla. St. Ann. § 422) provides:

"If any provision of this Act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this and the provisions of this Act are declared to be severable."

Section 23 of the act (63 Okla. St. Ann. § 423) provides:

"This Act shall be so interpreted and construed as to effectuate its general purpose, to make uniform the laws of those states which enact it."

Section 24 of the act provides:

"All acts or parts of acts which are inconsistent with the provisions of this Act are hereby repealed."

Section 25 of the act (63 Okla. St. Ann. § 424) provides:

"This Act may be cited as the Uniform Narcotic Drug Act."

"Approved May 14, 1935. Emergency."

It will thus be seen that the act of May 14, 1935, was a general "Uniform Narcotic Drug Act." It was a uniform act that was being passed by the legislatures of the several states, so that there might be uniformity in the possession and handling of narcotic drugs, and especially to the illegal handling and disposal of the same.

It will be noted that both acts deal with the same subjects. The act of 1919 being a special act. The act of 1935 being a general uniform act. There are certain conflicts between the acts and especially in reference to the punishment to be inflicted for a violation of the same.

The act of 1919 (section 2 [63 Okla. St. Ann. § 392]) provides:

"It shall also be unlawful for any person to transport, carry or take from one point within the state to another point within the state, of however short distance, any of the aforesaid narcotic drugs."

The act of May 14, 1935, has no provision against the unlawful transportation of narcotics.

An information was filed against the defendant in Canadian county, July 15, 1935, charging him on the 3d day of July, 1935, with the crime of transporting narcotic drugs from a point within Canadian county, to another point therein, about one-half mile distant. The evidence

discloses that defendant, with other parties, was approaching El Reno from the south on what is known as United States highway No. 81. The officers stopped his car and as defendant got out of the car he was seen to place something white in his mouth. One of the officers threw him down and began choking him. The officers testified that he said he had swallowed 50 grains of morphine. He was taken to Union City to the office of a doctor who gave him several doses of medicine, and the doctor testified that he told him that he had swallowed 50 grains of morphine. No part of the contents of whatever was swallowed by defendant was ever recovered. The statement made by him and the above circumstances, together with the fact that he was a drug addict, was all the testimony connecting the defendant with the transportation of morphine as alleged in the information.

The first question presented is that the defendant was charged in the information with the violation of the act of April 1, 1919, and that the alleged violation was on the 3d day of July, 1935, and after the passage of the act of May 14, 1935, and that the act of May 14, 1935, repealed the act of April 1, 1919, sections 4611 and 4612, Okla. Stats. 1931 (63 Okla. St. Ann. §§ 392, 393) ; that under the act of May 14, 1935, there was no penalty for the transportation of narcotic drugs; that, therefore, the information was insufficient to charge a crime against the laws of this state.

In this connection we think the defendant is correct. From the statement of the acts set forth it will readily be seen that the act of May 14, 1935, was a "Uniform Narcotic Drug Act." This is shown by the title of the act and the different provisions thereof. Section 12 of the act (63 Okla. St. Ann. § 412) regulates the transportation of drugs, and had it been the intention of the Legislature

for it to have been an offense to transport narcotic drugs under said act they would have undoubtedly so expressed it. Section 2 of said act (63 Okla. St. Ann. § 402), quoted above, does not provide that it shall be unlawful to transport narcotic drugs and had the Legislature intended to make it an offense they would have evidently incorporated it in section 2 of said act. It is evident that the Legislature was of the opinion that the act itself was comprehensive enough to adequately protect the state and its citizens against the illegal traffic of narcotic drugs, and to have a narcotic drug law uniform with the other states of this nation. The act makes it an offense to have illegal possession of narcotic drugs. In the instant case the defendant could have been charged with unlawful possession as he was with transportation and this would have probably been the better course. It will be noted that sections 23, 25 (63 Okla. St. Ann. §§ 423, 424), and 24, as above quoted, show that it was the intention of the Legislature that it should be considered as a general statute for the purpose of having a Uniform Narcotic Drug Law. Section 24 provides:

"All acts or parts of acts which are inconsistent with the provisions of this Act are hereby repealed."

This law was in full force and effect at the time the defendant was charged with the commission of the offense alleged in the information on July 3, 1935.

We are of the opinion that the act of May 14, 1935, repealed the act of April 1, 1919, sections 4611 and 4612, Oklahoma Statutes 1931 (63 Okla. St. Ann. §§ 392, 393), and this reasoning is sustained by the decisions of this court and the general authorities.

In Re James, 4 Okla. Cr. 94, 111 Pac. 947, 949, this court says:

"The rule that a later statute, general in its terms and broad enough to include matters provided for by a former special act, will ordinarily not affect the special provisions of such former act, is not a provision of substantive law, but is merely one rule for determining the legislative intent; and when it is apparent that the Legislature intended to make the later act exclusive, designed it to cover the whole subject-matter to which it relates, and to embrace the entire law on the subject, it will repeal the repugnant provisions of all former acts, general or special. 'When an earlier statute is special only in the sense that it applies to a single case, of which there are many in the state, and the later statute is general in its operation and applies to all such cases, then the earlier one is repealed by the later.' 26 Am. & Eng. Enc. L. 743. See, also, Southport v. Ogden, 23 Conn. 128; Coe v. Meriden, 45 Conn. 155; Nusser v. Com., 25 Pa. St. 126. Thus it is said in 1 Lewis' Sutherland on Statutory Construction, § 276:

" 'The question is one of intent. There is no rule of law which prohibits the repeal of a special act by a general one, nor is there any principle forbidding such repeal without the use of words declarative of that intent. The question is always one of intention, and the purpose to abrogate the particular enactment by a later general statute is sufficiently manifested when the provisions of both cannot stand together. * * * Special or local laws will be repealed by general laws when the intention to do so is manifest, as where the latter are intended to establish uniform rules for the whole state.' "

In the case of Petitti v. State, 7 Okla. Cr. 12, 121 Pac. 278, Judge Doyle says:

" 'All acts and parts of acts in conflict with the provisions of this act are hereby repealed.' The act of 1905 in effect repealed sections 2120 and 2121, Comp. Laws 1909 [21 Okla. St. Ann. §§ 265, 266], under the rule of construction that, where two acts are not in express terms repugnant, yet, if the latter act covers the whole subject

of the first, and embraces new provisions plainly showing that it was intended as a substitute of the first act, it will act as a repeal of the first act, especially where the subsequent act contains a general repealing clause. For this reason, in so far as it defines the punishment, the instruction given is erroneous. For the same reason, the court erred in pronouncing judgment against the defendant for imprisonment, and that he also pay a fine, as the latter act does not provide for both fine and imprisonment.

"Our conclusion is that the prosecution in this case is destitute of merit, and for the reasons stated the judgment of conviction will be reversed."

The Supreme Court of Oklahoma has often passed upon the same proposition. In the case of Garnett et al. v. Goldman, 39 Okla. 516, 135 Pac. 410, 412, the court says:

"It is a familiar rule of law that a statute revising the whole subject-matter of former acts, containing in the main the provisions of said acts, and evidently intended as a substitute for them, although it contains no express words to that effect, operates to repeal the former acts. Fritz v. Brown, 20 Okla. 263, 95 Pac. 437; Smock v. Farmers' Union State Bank, 22 Okla. 825, 98 Pac. 945; Ticer v. State ex rel. Holt, County Attorney, 35 Okla. 1, 128 Pac. 493."

In Hudson v. Ely et al., 36 Okla. 576, 129 Pac. 11, the court says:

"A statute revising the whole subject-matter of former acts, containing in the main the provisions of the former acts, and evidently intended as a substitute for them, although it contains no express words to that effect, operates to repeal the former acts."

In the present case the court, in his instructions to the jury, gave as to the punishment to be assessed against

the defendant, that prescribed by the act of May 14, 1935, yet the defendant was charged under the act of April 1, 1919. The act of May 14, 1935, as above stated, had no penalty for the illegal transportation of narcotic drugs. We think it was error to so instruct the jury. The trial court, after the verdict was rendered in this case, entered an order granting a new trial. Afterwards this order was set aside, and the motion for new trial was overruled. The record does not disclose the reason for this, but it is evident that the trial court was in doubt about the question involved in this case.

Other assignments of error are urged, but under the view as expressed we do not consider it necessary to pass upon them.

The judgment and sentence is reversed and set aside.

DAVENPORT, P. J., and DOYLE, J., concur.