## BONNETT v. STATE *ex rel.* NEWER.

No. 7080.   Opinion Filed June 1, 1915.

(150 Pac. 198.)

1. STATUTES—Officers—Consolidation Act—Construction—Validity. In determining the constitutionality of the Consolidation Act (Act May 1, 1913 [Sess. Laws 1913, p. 330]), we will construe the same **in pari materia** with an act approved May 19, 1913 (Sess. Laws 1913, p. 465), and as amended by an act approved February 1, 1915 (Sess. Laws 1915, p. 5), and as if it had read from the beginning as it does with the amendatory act incorporated in it and all construed together as one act.

2. STATUTES—Construction—Amendment. Where the intent of the amendment is apparent, such intent will be carried into the original act, and every presumption indulged to effectuate that intention by referring words used in the amendatory act to the original act and construing them in their proper connection throughout the act as amended.

3. CONSTITUTIONAL LAW—Counties — "Officers" — Deputies of County Clerk—Salaries—Delegation of Legislative Power. Where act approved May 1, 1913, provided that the county clerk in certain counties having a certain population, by and with the consent of the board of county commissioners, may appoint, when the public service demands it, a certain number of deputies, who shall receive certain salaries to be fixed by the board of county commissioners, not to exceed the amount fixed in the act, **held**, that said deputies are not officers with a term, within the contemplation of section 18 of the Schedule of the Constitution, but employees without a term, and that the act vesting the board of county commissioners with authority to fix their salaries is not a delegation of legislative power.

4. COUNTIES — Statutes—County Clerks—Deputies—Construction of Statute—Prospective Operation—Special. Legislation. Where act approved May 1, 1913, provides (section 6), "In all counties having a population not to exceed 30,000, the county clerk may appoint not more than two deputies, * * *" and (section 7) "In counties having a population of more than 30,000 and not to exceed 60,000 the county clerk shall * * *" be allowed not to exceed three deputies, and (section 8) "In counties having a population of more than 60,000 the county clerk shall * * * be allowed not to exceed five deputies," and the amendatory act, approved February 1, 1915, provides (section 8), "In counties having a population of more than 60,000 as now or hereafter shown by the last federal census, the county clerk shall * * * be allowed not to exceed five deputies," **held**, the intent of the amendment being to make the act prospective in its oper-

ation, that the words "as now or hereafter shown by the last federal census" should be referred to and construed in their proper connection in sections 6 and 7 and made applicable to all counties within the contemplation of the act which may then or thereafter have the population prescribed by the act as amended. **Held**, further, that said act, construed as amended, being prospective in its operation, is general and not special legislation.

5.    **COUNTIES—Officers—Consolidation Act—Validity—Amendment.** The district court granted a peremptory writ commanding B., as register of deeds of K. county, to turn over the paraphernalia of his office to N., county clerk of that county, pursuant to the provisions of an act approved May 1, 1913, which said writ was resisted by B. on the ground that said act was unconstitutional. Thereafter, and pending an appeal from said judgment, said act was amended by an act approved February 1, 1915, so as to cure the defect complained of. **Held**, that in passing upon the objections to the original act this court will construe the same as amended.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County;*
*James B. Cullison, Judge.*

Mandamus by the state, on the relation of William G. Newer, against George P. Bonnett. Judgment for relator, and respondent brings error. Affirmed.

*George L. Bowman* and *Devereux & Hildreth (Jennings & Levy,* of counsel), for plaintiff in error.

*S. P. Freeling,* Attorney General, and *W. B. Blair,* County Attorney of Kingfisher County, for defendant in error.

*Ames, Chambers, Lowe & Richardson* and *S. A. Horton, amici curiae.*

TURNER, J.   This is an application for a writ of mandamus. The motion for the peremptory writ was filed in the district court January 5, 1915, by Newer. On January 7, 1915, after the return to the alternative writ, the court let the peremptory writ run against Bonnett, who brings the case here. Whether the writ should run commanding George P. Bonnett, who in 1912 was duly elected

and thereafter qualified and, up to the time this writ was invoked, had been acting as register of deeds of Kingfisher county, to turn over the paraphernalia of his office to William G. Newer, who on November 3, 1914, was elected and thereafter qualified and, up to the time stated, had been acting as county clerk of that county, turns upon the constitutionality of an act approved May 1, 1913, known as the Consolidation Act (Sess. Laws 1913, p. 330), construed *in pari materia* with an act approved May 19, 1913 (Sess. Laws 1913, p. 465), and as amended by an act approved February 1, 1915 (Sess. Laws 1915, p. 5). That part of the act with which we have to deal, so construed and amended (amendment in italics), reads:

"Section 5. The office of the register of deeds is hereby consolidated with the office of county clerk in all counties *in* this state, and said office so consolidated shall be hereafter known as the *office of* county·clerk, and in addition to the duties now imposed *by law* upon the county clerk he shall perform the same duties that are now performed by the register of deeds, provided, however, that this act shall not apply to counties having a population of over eighty thousand; but in all counties having a population of over eighty thousand the treasurer shall receive as his full compensation a salary of $2,500.00 per annum, the county judge shall receive as his full compensation a salary of $2,400 per annum and the sheriff, the clerk of the superior court, the county clerk and register of deeds, shall receive as their full compensation a salary of $2,100.00 per annum.

"Sec. 6. In counties having a population not to exceed thirty thousand, the county clerk may appoint not more than two deputies by and with the consent of the board of county commisisoners when the public service demands such deputy or deputies. The first deputy shall receive a salary to be fixed by the county commissioners, not to exceed seventy-five dollars per month, and the second deputy shall receive a salary to be fixed by the county commissioners, not to exceed sixty dollars per month. The salary of all such deputies shall be paid monthly out of the

county treasury, as provided by law for the payment of county officers.

"Sec. 7. In counties having a population of more than 30,000 and not to exceed 60,000, the county clerk shall, with the advice and consent of the board of county commissioners, be allowed not to exceed three deputies. The first deputy shall receive a salary to be fixed by the county commissioners not to exceed one hundred ($100.00) dollars per month, and each of the other deputies shall receive a salary not to exceed seventy-five ($75.00) dollars per month, to be fixed by the county commissioners, and paid out of the county treasury monthly.

"Sec. 8. In counties having a population of more than 60,000 *as now or hereafter shown by the last federal census,* the county clerk shall, with the advice and consent of the county commissioners, be allowed not to exceed five deputies. The first two deputies shall receive a salary to be fixed by the board of county commissioners, not to exceed one hundred ($100) dollars per month each, and all other deputies shall receive salaries to be fixed by the board of county commissioners, not to exceed seventy-five ($75.00) dollars per month. The salary of all deputies shall be paid monthly out of the county treasury as is provided by law for the payment of such county officers; provided, however, that in all counties wherein it shall be made to appear to the satisfaction of the board of county commissioners upon the application of the county clerk that an emergency has arisen and that additional deputy or deputies are needed, the county clerk may appoint not to exceed three in number, by and with the approval and consent of the board of county commissioners; provided, further, that the salary of said additional deputy or deputies shall not exceed the sum of fifty dollars per month each.

"Sec. 9. The court clerk and the county clerk, provided for in this act *in each county having a population of 60,000 or less, as now or hereafter shown by the last federal census,* shall * * * receive the same salary as full compensation for their services, as provided by law for the clerk of the district court and county clerk. *In counties having a population of more than 60,000 as now or hereafter shown by the last federal census, the court*

*clerk and county clerk, shall each receive a salary of twenty-one hundred dollars ($2,100.00) per annum.*

"Sec. 10. The court clerk and county clerk, as successor to the office consolidated by the provisions of this act, shall be nominated and elected at the primary and general election in the year 1914, and shall enter upon the duties of their said offices on the first Monday in January, 1915, and it shall be the duties of the officers of the different offices hereby consolidated to deliver to the officers of the offices hereby created all the books, records, papers and files belonging to their several offices at the expiration of the term thereof on the first Monday in January, 1915.

"Sec. 11. That the offices of *the* clerk of the district court, clerk of the county court, clerk of the superior court, and register of deeds, *in every county in this state* are hereby abolished.

"Sec. 12. That in all cases where the population of the different counties is referred to in this act, it has reference to and shall be based upon the last federal census."

Assailing the act, respondent contends that the same is unconstitutional because, he says, the act delegates legislative power to the various boards of county commissioners to fix the salary of the various deputies in violation of section 1 of article 4 of the Constitution, which reads:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

And of section 18 of the Schedule, which reads:

"Until otherwise provided by law, the terms, duties, powers, qualifications, and salary and compensation of all county and township officers, not otherwise provided by this Constitution, shall be as now provided by the laws of the territory of Oklahoma for like named officers."

He says that "until otherwise provided by law" means that the salaries of county officers are, when not otherwise

provided by law, to be fixed by the Legislature.   Just so, but this has no reference to a deputy county clerk, for the reason that he is not a county officer with a term within the contemplation of said provision, but an employee without a term.   Such was, in effect, our holding in *Board of County Commissioners of Muskogee County v. Hart,* 29 Okla. 693, 119 Pac. 132.   In that case the compensation involved was that of a deputy clerk.   The question decided was whether he was an officer with a term within the contemplation of section 10 of article 23 of the Constitution, which reads:

"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless.   *   *   *  "

After holding, in effect, that he was not an officer with a term, but an employee without a term, this court, in fixing his status, quoting approvingly from *Gibbs v. Morgan,* 39 N. J. Eq. 126, said:

"  *   *   *   Deputy clerks are public officers, but they have no term in the sense in which the expression is used in the paragraph above quoted.   (Referring to paragraph 11, *supra.*)   They are employees of the county clerks, and their employment is a matter of mere private contract. The law merely constitutes them public officers, and gives them certain powers.   It does not establish any particular period of service for them.   This is left to private agreement.   *   *   *  "

See, also, *State ex rel. Matlack v. Oklahoma City,* 38 Okla. 349, 134 Pac. 58; *Nelson v. Troy, Co. Auditor, et al.,* 11 Wash. 435, 39 Pac. 974.

And so we say that when the act in question authorizes the various boards of county commissioners to fix the salaries of the deputies therein provided for, it means that such are to be employees of the counties they serve, that they are to serve by the month and for no fixed term,

that the commissioners are authorized to fix their compensation in their usual manner of so fixing that of employees, which is by order, and approve the accounts of the deputies at the end of each month for the amount of their compensation so fixed. Such order of the board cannot be classed as legislation or legislative action—but, as an appeal would no doubt lie therefrom (*Hadlock v. Board of County Commissioners,* 5 Okla. 570, 49 Pac. 1012), the same seems to be judicial in its nature, and clearly within the power of the board to perform. *Brazell et al. v. Zeigler, County Clerk,* 26 Okla. 826, 110 Pac. 1052; *Parker et al. v. Board of County Commissioners,* 41 Okla. 723, 139 Pac. 981.

In *Reynolds et al. v. Board of County Commissioners,* 6 Idaho, 787, 59 Pac. 730, the facts were that, at a general election, there was elected in Oneida county a clerk of the district court, a sheriff, a superintendent of public instruction, and a treasurer. At a meeting thereafter the board of county commissioners of said county made an order, pursuant to an act of the Legislature, fixing the salaries of the officers elect. From the order each officer appealed to the district court by separate appeal. There, pursuant to stipulation, the causes were consolidated and tried as one, pursuant to agreement that the court might modify or affirm as though each appeal had been heard separately. On the trial the court raised the amount of salary of every one of them, and the board of county commissioners appealed to the Supreme Court. One of the errors assigned was that the power to fix, the salaries in question was a legislative function and, hence, not reviewable by the courts. Characterizing said act of fixing the salaries in question, the court said:

"It is a well-settled rule that a power or function vested solely in one department, body, board, or tribunal by express constitutional provision cannot be delegated by such department, body, board, or tribunal to another de-

partment, body, board, or tribunal. The Legislature cannot delegate the functions expressly vested in it by the Constitution to boards of county commissioners or to the judiciary. If, as contended by appellants, the act in question, * * * known as the 'Salary Bill,' delegates to the board of county commissioners in the various counties a legislative power in the matter of fixing the salaries of county officers, then the said act should be held unconstitutional and void. But we do not so consider the act. It does not vest or attempt to vest in the board of commissioners the power to make law. * * * They are called upon to exercise a judicial discretion, and to act so as to carry out the intent of the statute, with due regard for the rights and interests of both office holder and taxpayer. Their action involves judicial discretion. They act, not as a legislative body, but quasi judicially."

And, after holding that such it was for the reason that an appeal would lie therefrom, remanded the cause for further proceedings. In the second paragraph of the syllabus the court said:

"Act March 7, 1899, provides a uniform basis—reasonable compensation—throughout the state for the fixing of salaries of county officers, is general in its operation, does not delegate legislative functions, does not contravene the Constitution, and is a valid act."

In support of this section of the syllabus the court cites *Stookey v. Board*, 6 Idaho, 542, 57 Pac. 312. That was an original proceeding in *quo warranto* commenced by the plaintiff, who was clerk of the district court and *ex officio* auditor and recorder in and for Nez Perce county, to obtain a writ prohibiting the defendants, who were the county commissioners of that county, from fixing his salary for two certain years. His contention was that a certain act of the Legislature, known as the "County Salary Act," was in contravention of the Constitution and void. The act fixed the maximum and minimum compensation to be received by the county officers, leaving the exact amount to be received by each to be fixed by the board of

county commissioners in the respective counties. One of the points raised by plaintiff was that "said act is an attempt to grant legislative power to the board of county commissioners and is a delegation of legislative functions," but the court held not so, and said:

"If the Legislature is prohibited from vesting in the county commissioners the discretionary power of fixing the compensation of county officers within certain prescribed limits, it is by the provisions of our Constitution, and not otherwise. The vesting of such discretionary power in the board of county commissioners, except with reference to their own salaries, is not forbidden by, or contrary to, public policy. Is it forbidden by any provision of the Constitution? We think not. We find nothing in our Constitution prohibiting it."

And in the syllabus:

"The Legislature has authority to provide by statute the maximum and minimum salary of county officers, and may vest in the boards of county commissioners the discretionary authority of determining the amount of salary of county officers within the limit of such maximum and minimum salary, except the salary of such county commissioners. Public policy forbids that any officer be empowered to fix his own compensation."

Is the act in question local and special? Respondent says it is, and in violation of section 32, article 5 of the Constitution, because of section 12 of the act, which reads:

"That in all cases where the population of the different counties is referred to in this act, it has reference to and shall be based upon the last federal census"

—because of which, he says, counties other than those of the population named in sections 6, 7, and 8, thereafter acquiring the requisite population, cannot come within the provisions of the act so as to be equally affected thereby. In other words, the contention is that as section 6, for example, means to give not more than two deputies to those counties having at the time of the passage of the act a population of not to exceed 30,000 according to the fed-

eral census of 1910, and makes no provision for other counties, upon acquiring the same population, to come in and have appointed a like number of deputies, that the act is not general but special legislation. This objection is made to the act approved May 1, 1913, before it was amended, and inasmuch as we have held, in line with the great weight of authority, in the syllabus in *Ina B. Hatfield v. Chas. H. Garnett*, 45 Okla. 438, 146 Pac. 24, that:

"Chapter 77, Sess. Laws 1913, p. 119, being an act amending article 7, c. 14, Sess. Laws 1909, creating superior courts in various counties of the state, classifies the counties of the state on the basis of the federal census of 1910, and is not prospective in its operation, and is local and special legislation, and no notice of its introduction having been published for four consecutive weeks in some weekly newspaper, published or having a general circulation in the counties affected thereby, and no verified proof of such publication having been filed with the Secretary of State, as required by section 32, art. 5, of the Constitution, same is invalid"

—the objection seems to be well taken. And we might so hold were it not for the fact that the act under construction in that case was held not to be prospective in its operation, while here it seems so to be. There seems to be a distinction between an act which, as there, establishes a court in certain counties of the state of a certain population *eo instante* upon the taking effect of the act, and which said act would not be prospective in its operation, and an act which, as here, authorizes the clerk in counties having a certain population "as shown by the last federal census," which means next before he acts, whenever thereafter the necessity may arise, to appoint not more than a certain number of deputies with the consent of the board of county commissioners, and when, in the future, the public service demands it. Clearly, as the former act establishes courts immediately upon its taking effect and refers to conditions then existing, while the latter act establishes

nothing at the time but authorizes future action only, and as the words, "as shown by the last federal census," have as much reference to the last federal census at the time the provisions of the act are invoked as they do to the last federal census at the time the act took effect, the latter act may be said to operate as well prospectively as not, and for that reason is constitutional, while the former is not. And so it would seem that, as these words which refer to the last federal census are applicable as well to the last federal census at any time thereafter when the act is invoked as to the federal census at the time the act took effect, we, if required to pass, would be inclined to adopt that construction of the act which upholds, rather than destroys, its constitutionality, and to hold that the act is prospective in its nature and extends to all counties which may subsequently acquire the prescribed population, and for that reason the act is not special but general legislation. This would be in keeping with a number of decisions *(Johnson v. City of Milwaukee,* 88 Wis. 383, 60 N. W. 270; *Boyd v. Same,* 92 Wis. 456, 66 N. W. 603; *Evansville, etc., Co. et al. v. City of Terre Haute,* 161 Ind. 26, 67 N. E. 686; *McGarvey v. Swan City Treasurer,* 17 Wyo. 120, 96 Pac. 697; *Ladd et al. v. Holmes, County Clerk,* 44 Or. 167, 66 Pac. 714, 91 Am. St. Rep. 457), and a familiar rule of construction applied in *Johnson v. City of Milwaukee, supra,* where in the syllabus it is said:

"A construction of a statute, not inconsistent with its words, which will support its constitutionality will be preferred to a more natural or obvious construction which would render it invalid. * * *"

But let that be as it may. Assuming that the intent to make the act operate prospectively is not made clear by the use of this language in the original act, we think it was made so when, by the amendatory act approved February 1, 1915, the Legislature put its intention so to do beyond question and thereby made clear that it meant,

47—17

when it used the words "as shown by the last federal census," not only the last federal census next before the act took effect, but the last federal census as shown at any future time when the act is invoked by any county which may, by reason of increased population, come within a prescribed class.

Although the respondent assails the constitutionality of the original act only and invites us to confine ourselves to this particular language in the original act, we decline, but will, in determining what the Legislature meant by the use of the words in question, construe that act together with the amendatory act as one act, in keeping with the rule laid down in Black on Interpretation of Laws (2d Ed.), sec. 166, where the same is stated thus:

"An amended statute is to be construed as if it had read from the beginning as it does with the amendment added to it or incorporated in it."

Or as stated in the text (section 165):

"When an amendment to a statute is adopted, there are two separate enactments, the old and the new, but by their union there is produced one law, namely, the statute as amended. From this it follows that the legislative intention, in making the amendment, is to be learned from a consideration of the original act and the amendment as one act. * * * So also, in construing an amendatory statute, the mischiefs or hardships produced by the old law must be considered, together with the remedy proposed by the new. * * *"

The original act provides (section 6), "In counties having a population not to exceed 30,000 the county clerk may" appoint not more than two deputies, etc., and (section 7) "In counties having a population of more than 30,000 and not to exceed 60,000, the county clerk shall * * * be allowed not to exceed three deputies," and (section 8) "In counties having a population of more than 60,000, the county clerk shall * * * be allowed not to

exceed five deputies," which means, when operated on by section 12, *supra*, counties having that population as shown by the last federal census. But, as stated, it was not clear whether the Legislature meant as shown by the last federal census next before the act took effect or the last federal census before the act might at any time in future be invoked. This doubt was the mischief to be remedied by the amendatory act. Turning to the amendatory act, we find that, while it is entitled an act amending sections 1, 5, 8, 9, and 11 of the original act, sections 8 and 9 of the original act only are amended to remove the doubt so as to read: "as now or hereafter shown by the last federal census," thereby making the act prospective in its operation as to counties having a population of 60,000, and saying nothing about counties of the population named in sections 6 and 7. This leaves sections 6 and 7 dealing with counties having a population not to exceed 30,000 and counties having a population of more than 30,000 and less than 60,000 unamended, except by implication. Hence it is for us to determine whether such intent to remove the doubt and make the act prospective should also run to the original act, and whether the words "as now or hereafter shown by the last federal census" should be referred to and construed in their proper connection in sections 6 and 7, and thus made applicable to all counties within the contemplation of the act which may then or thereafter have the population prescribed by the act as amended. We think such intent should be carried into the original act, and every presumption indulged to effectuate the intent to make the act as amended prospective in its operation, and also that the words in question should be referred to and construed in their proper connection throughout said act.

In *State v. Wilbor*, 1 R. I. 199, 36 Am. Dec. 245, it is said:

" * * * The court is to inquire how the original and amendatory acts taken together are to be understood,

according to the common-law rule for interpreting statutes, and having thus ascertained their true intent, it is bound to carry that intent to its final effect, if those forms of law through which it must act will admit of it. * * * "

In *State v. Corbett*, 61 Ark. 226, 241, 32 S. W. 686, 690, speaking to a situation substantially as here, it is said:

" 'Any act which manifests a design that any particular provision shall be the law is a sufficient enactment.' *Wood v. Wood*, 54 Ark. 172 [15 S. W. 459] ; *Postmaster General v. Early*, 12 Wheat. 136 [6 L. Ed. 577] ; End. Int. of Statutes, secs. 373-376; *State v. Miller*, 23 Wis. 634. And when the Legislature has power to enact a law, and its intention is manifest, effect will be given to the intention, rather than to a mere failure of its language to express or describe what was intended."

In *Building & Loan, etc., v. Shon*, 54 W. Va. 101, 46 S. E. 222, in the syllabus, it is said:

"Words in different parts of a statute must be referred to their proper connections, giving each in its place its proper force."

All the adjudicated cases do is to lay down the rules and leave us to apply them as occasions arise. No case can be found precisely in point, but in *McKibben v. Lester*, 9 Ohio St. 628, the intention of the amendment was carried into the original act as amended. There the court said:

"Where in the first section of the act of May 1, 1854, amending the fourth section of the act of March 14, 1853, in regard to the jurisdiction of justices of the peace in civil cases (Swan's R. S. 532a), it is provided that 'under the restrictions and limitations herein provided, justices of the peace shall have * * * concurrent jurisdiction with the court of common pleas, in any sum over one hundred dollars, and not exceeding three hundred dollars,' the words 'under the restrictions and limitations herein provided,' must be taken to refer to the restrictions and limitations provided in the original act, as it stands after all the amendments made thereto are introduced into their proper places therein."

In *Meer v. Board of County Commissioners*, 26 Ind. App. 85, 59 N. E. 184, the facts were that the act of 1891 failed to provide a salary for the county treasurer. Thereafter a county treasurer was elected, and thereafter the act of 1891 was amended by the act of 1893, which provided him a salary. In construing the acts together, the court held that he was entitled to a salary as fixed in the amendatory act, and that from the date of the amendment the amended statute should be construed as if it had read from the beginning as it did with the amendment incorporated in it, citing in support of the rule Black on Int. of Laws, 356-357. And so we say that when the act as amended says (section 6), "In all counties having a population not exceeding 30,000 the county clerk may" appoint, etc., and (section 7) "In all counties having a population of more than 30,000 and not to exceed 60,000 the county clerk" shall do so and so, and (section 8) "In counties having a population of more than 60,000 as now or hereafter shown by the last federal census the clerk shall," etc., it means that the words "as now or hereafter shown by the last federal census," contained in section 8 are to be understood as relating back to sections 6 and 7, so as to become a part thereof in their proper connection so as to read (section 6), "In all counties having a population not exceeding 30,000, as now or hereafter shown by the last federal census, the county clerk may," etc., and (section 7) "In all counties having a population of more than 30,000 and not to exceed 60,000, as now or hereafter shown by the last federal census, the county clerk shall," etc. The failure of the Legislature to repeat "as now or hereafter shown by the last federal census" in each and every proper connection throughout the act, was a failure of language which, in construing the acts together, should be supplied by relation, as where one would say: I give and bequeath so and so to Henry, James, and John Smith of the manor of Dale, which means: I give and bequeath

to Henry Smith of the manor of Dale, and to James Smith of the manor of Dale, and to John Smith of the manor of Dale. And so we hold the act as amended to be a general and not a special law, and for that reason not in conflict with the Constitution, as contended. *Johnson v. City of Milwaukee, supra.* And this, too, although, after the writ ran in the trial court the amendatory act was passed curing the defect in the original act, the constitutionality of which was alone assailed in the trial court. This was the attitude of the court in *Ferry v. Campbell, Exec., etc.,* 110 Iowa, 290, 81 N. W. 604, 50 L. R. A. 92, where, in the syllabus, it is said:

"Where, pending an appeal from an order overruling a demurrer to a complaint, based on the contention that the statute on which the cause of action was based was unconstitutional, the Legislature removed the defect by the passage of an amendment, the fact that the case was heard on demurrer, and presented to the Supreme Court on an assignment of errors, did not prevent the appellate court from deciding the appeal under the law as amended."

It follows that there is no merit in the third assignment of error, which is "that the act being local and special, is in conflict with section 46b of article 5 of the Constitution, in that it attempts to regulate county affairs by a local and special law." Nor in the fourth assignment, which is that "the act (is) in conflict with and violative of section 46m of article 5 of the Constitution, for the reason that it attempts to create offices and prescribe the powers and duties of the officers in counties by a local and special act." Nor in the fifth assignment, which is that the the act cannot have a uniform application throughout the state. Nor in the sixth assignment, which is "that the several main provisions of the act are so repugnant to each other as to vitiate the entire act."

We are therefore of opinion that the court was right in commanding the writ to run, and hence the judgment is affirmed.

All the Justices concur.