595 P.2d 1334 (1979)
Jody KIRK, Muskogee County Clerk, Nadine Harnage, District Court Clerk, Bill Vinzant, Muskogee County Sheriff, Oscar Thomas, Muskogee County Treasurer, Bob Mathews, Muskogee County Superintendent of Schools, Appellees,
v.
BOARD OF COUNTY COMMISSIONERS, COUNTY OF MUSKOGEE, Appellant, and
Oklahoma District Attorneys' Association, Amicus Curiae-Intervenor.
No. 53103.
Supreme Court of Oklahoma.
June 5, 1979.
John C. Garrett, Muskogee, for appellees.
Michael C. Turpen, Dist. Atty., Muskogee, for appellant.
Richard L. Dugger, President, Dist. Atty. Assn. of Oklahoma, Sayre, amicus curiae-intervenor.
*1335 HODGES, Justice.
This is an appeal by the appellants, the Board of County Commissioners of Muskogee County, Oklahoma, [Commissioners], from the judgment of the district court. The court found that certain county officers had been assigned additional duties by the Oklahoma Legislature, which were not germane to the duties of their respective offices, for which they were not compensated; and that because officers serving in the same capacity and performing the same duties in other counties received statutory salary increases, the affected officers had been denied equal protection under the law.

I
The Oklahoma Legislature pursuant to 19 O.S.Supp. 1978 § 180.62 established the basic salaries of elected county officers. Subsection A of the statute, which became effective January 8, 1979, provided for salaries of county officers whose terms expire on the first Monday in January or July of 1979, or on the first Monday in January or July of 1981. These are all county officers who were in office when the statute was amended. Subsection B of the statute provided for salaries of county officers whose terms commenced on or after the first Monday in January, 1979, including all county officers whose terms began after the statute was amended. The salaries provided by Subsection B are substantially greater than those provided by Subsection A. The rationale for the salary differential is based on the Okla.Const. art. 23, § 10, which provides in pertinent part:
"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; . ."
The appellees fall into the category governed by Subsection A of the statute. As a result, it is argued by appellants that appellees are not entitled to the statutory raise because of the constitutional prohibition against changing salaries of public officials during their terms in office. It is contended by the Commissioners that the trial court erred in finding that all county officers were entitled to salary increases.
It is asserted that the trial court decision hinges on the finding that certain non-germane duties had been imposed on county officers by the legislature without compensation to the officers, when in fact the office holders were already performing the additional duties. In Phelps v. Childers, 184 Okl. 421, 89 P.2d 782 (1939), it was determined that the test is whether new duties are germane to the duties of the office. If they are, the salary increase violates the constitutional prohibition; if not, the new duties are non-germane and the salary increase *1336 is permissible. It is argued by the county officers that they have shown that each office has had additional duties bestowed upon it in the form of non-germane duties and, therefore, they are entitled to the salary increase commensurate with that of the county officials receiving a raise in January, 1979. Phelps involved an increase in the salaries of certain Oklahoma Supreme Court Justices during their respective term of office. To qualify for the increases the Justices were to prepare a compilation of the laws on "civil, probate and appellate procedure." Later, in Breeden v. Nigh, 441 P.2d 981 (Okl. 1968), it was also determined that the assignment of nongermane duties did not violate the Oklahoma constitutional prohibition.
We are well aware of the concept behind the non-germane versus germane duties. However, we feel that it is an attempt to avoid coming to grips with the basic problem presented by art. 23, § 10. While we do not believe that the constitutional provision is, on its face, a denial of equal protection of the laws as mandated by the Fourteenth Amendment, the application of the provision in this instance is repugnant to the United States Constitution. The county officers asserted at the trial court level that the statute, which is predicated on compliance with art. 23 § 10, was invidiously discriminatory. The district court found that it was. We agree. In this case we are dealing with one class, elected county officials, which comprise a group of individuals so interrelated that to differentiate that some shall receive salary increases in 1979, and the balance in 1981, makes a distinction within that class. This distinction also is applied to those employees working for the elected county officials not receiving raises until 1981. These employees are losing benefits which they would be entitled to if that official were receiving a salary commensurate with those officials receiving a raise in 1979.
Evidently, earlier decisions of this Court were based on the philosophy expressed by Mr. Justice Holmes in Bain Peanut Co. v. Penton, 282 U.S. 449, 501, 51 S.Ct. 228, 229, 75 L.Ed. 482 (1930), in which he said, "We must remember that the machinery of government would not work if it were not allowed a little play in its joints." We believe the time has come for the machinations of government to work honestly without subterfuge. The equal protection clause of the United States Constitution provides that no state shall make or enforce any law which denies to any person within its jurisdiction equal protection of the laws.[1] In Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), the United States Supreme Court stated that the guarantee of equal protection of the laws is a pledge of the protection of equal laws. In Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), it was acknowledged that the states in determining the reach and the scope of particular legislation need not provide abstract symmetry; and that they may mark and set aside the classes and types of problems according to apparent needs, and as dictated or suggested by experience. It was noted that the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same. However, the Court reaffirmed the view that the equal protection clause does not prevent recognition of degrees of evil.
Exact equality is not a prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment.[2] The only forbidden classification involves invidious discrimination.[3] Invidious discrimination is defined as a classification which is arbitrary, irrational, and not reasonably *1337 related to a legitimate purpose.[4] A law is invidiously discriminatory when it lays an unequal hand on those in the same class and same quality and not on another. In order to establish a violation of the equal protection clause, there must be proof that a discriminatory intent or purpose was the motivating factor in the official action. De jure discrimination in which a law or official policy expressly treats a class of persons in a less favorable manner is by its very nature intentional.[5] Discrimination, in general, is a failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored. Equal protection does not require identity of treatment. It only requires that: the classification rest on real and not feigned differences; the distinction have some relevance to the purpose for which the classification is made; and the different treatments are not so disparate relative to the difference in classification as to be completely arbitrary.[6]
We find that there is no rational basis for the statutory classification, and that it is an unequal law. Therefore, the Board of County Commissioners of the counties of the State of Oklahoma shall pay all Class A and B officers the higher salaries established under the statutory provision.
AFFIRMED.
BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.
LAVENDER, C.J., IRWIN, V.C.J., and WILLIAMS and OPALA, JJ., dissent.
OPALA, Justice, dissenting:
The first-impression question before us is: Where not all county officials are by law elected at the same time, and the State Constitution prohibits the legislature from changing an elected official's salary during his term of office, does the Equal Protection Clause of the XIVth Amendment require that a statutory salary increase formula, expressly made effective to coincide with the commencement of the next term of office for some but not all the county officials within the state, be extended judicially to every other county official who, on the effective date of the enactment, still remains within his then current term of office?
If I were permitted to give my opinion on the basis of common sense and of my own notions of fairness, I would doubtless arrive at an affirmative answer to the question. But a different conclusion is demanded of me by the principles of fundamental law which I am bound by my oath to apply in resolving the issue before us.
A law may not be declared invalid because it violates the Equal Protection Clause unless it fails to pass muster upon a careful consideration of its impact to be measured by a three-dimensional test. In the assessment to be made we are called upon to weigh these elements: (1) the character of the classification under attack (2) the individual interests claimed to be adversely affected [or the benefits being withheld] by the classification deemed fraught with constitutional infirmity and (3) the governmental interests which may be advanced in support of the classification under attack.[1]
Strict scrutiny of a legislative classification is mandated only when its impact interferes with the exercise of a right recognized as fundamental [e.g. one of uniquely private nature, the right to vote, the right of interstate travel and rights guaranteed by the First Amendment] or operates to the peculiar disadvantage of a "suspect" class *1338 [e.g. alienage, race or ancestry]. The cluster of interests in governmental employment is not per se viewed as a fundamental right which demands strict scrutiny on challenge upon equal protection grounds. Nor are elected public officials embraced within a "suspect" class for purpose of equal protection analysis.[2] That class is defined by federal case law as one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."[3]
Judicial examination of a challenged classification, which is unrelated either to a fundamental right or to a "suspect" class, may be described as a search for a rational basis. It is to be made in "awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary."[4] A government does not deny equal protection "merely because the classifications made by its laws are imperfect. If the classification has some `reasonable basis', it does not offend the constitution simply because the classification `is not made with mathematical nicety or because in practice it results in some inequality'".[5]
In the situation before us it is the impact of a diverse classification used in two discrete enactments that combined to produce the disparity complaint advanced here. The first of these statutes, enacted in 1959, placed county officials, for compensation purposes, in three salary groups.[6] The second, which followed in 1973, divided the same officials into two categories when scheduling the time for their initial election to the newly-created four-year term of office extended to all of them.[7]
Simply stated, the problem is that some county officials, previously placed, by § 180.61, in the same compensation class with others, became eligible for a salary increase earlier than their similarly classed colleagues because their initial four-year term [under § 131] had begun two years [in 1974] ahead of the others.
An effort to fashion by case law a constitutional mandate for treatment of all county officials in Oklahoma, for salary purposes, as a single indivisible class must simply fail. It lacks the requisite underpinnings in plain standards of rationality. County officials are by law a very divergent lot. Each of them performs a set of vastly different duties from others and, because they exercise a varying degree of executive responsibility, they may not readily be classifiable into a single all-inclusive salary category which would make the use of legislative judgment in imposing pay differentials constitutionally impermissible.
The equal protection complaint can draw no strength here from the patently disparate treatment being accorded by 19 O.S. Supp. 1978 § 180.62[8] to officials who fall into the very same salary class under § 180.61. No one surely could build a convincing rational basis for a claim that his inclusion in any one of the three salary classes under § 180.61 is or should be itself constitutionally protected. This is so because the county officials did not lose their divergent characteristics by the mere force of § 180.61 classification.
*1339 The equal protection clause may not be invoked to create a substantive right to economic equality or to freedom from economic disparity. The Federal Constitution does not provide judicial remedies for economic ills. The state retains its power to draw reasonable distinctions between discrete county officials within its borders. Only if statutory classification rests on grounds wholly irrelevant to the achievement of state's legitimate objective is the Equal Protection Clause offended.[9]
I am constrained to the view that the legislative classifications in §§ 131, 180.61 and 180.62, viewed singly or in combination, are relevant to the achievement of legitimate state's objective in orderly salary management. They do not lack a rational basis and hence do not offend the Equal Protection Clause.
I am authorized to state that LAVENDER, C.J., IRWIN, V.C.J., and WILLIAMS, J., concur in these views.
WILLIAMS, Justice, dissenting:
What is involved in this case is simply that the five officers named in the caption hereof obtained a writ of mandamus requiring the Board of County Commissioners of Muskogee County to give them a pay raise in the middle of the terms of office to which they, respectively, had been elected and Board appeals. I would reverse.
Our Oklahoma Constitution, Art. XXIII, Section 10 in pertinent part reads as follows, to-wit:
Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment;
In the 1911 case of Board of Com'rs. of Muskogee County v. Hart, 29 Okl. 693, 695, 119 P. 132, 134, this Court, referring to the above provision of our Constitution stated that, "The Oklahoma provision prohibits the changing, either increasing or decreasing, of the salary or emoluments of a public officer after his election or appointment, or during his term of office. * * * `During his term of office' construed with what goes before, indicates that it was intended that this provision applied to public officials that had a term of office * * *."
The Thirty-Sixth Oklahoma Legislature, Second Regular Session in 1978 enacted statutes giving sizeable salary increases in certain counties to certain county officers (listed in caption) effective for those taking office in January or July 1979 but not effective for those holding over until 1981. (Salary raises for such officers would be effective after the next election.) The salaries of certain employees of such officials being keyed percentage-wise to those of their officer-employers likewise are so affected. Such statutes as listed in the petition in error are 190 O.S.A. §§ 180.62, 180.63 and 180.64A.
Appellees, plaintiffs in the action in the trial court alleged entitlement to a writ of mandamus giving them the salary raise granted by the Legislature to other officers in the same class with themselves on the theory that they had had the responsibility to perform nongermane duties thrust upon them and that they had been deprived of Fourteenth Amendment (to U.S. Constitution) equal protection rights.
I would hold that appellees are not entitled to a salary raise on the theory of being required to perform duties not germane to the ordinary functions of their offices for the reason that the device of granting salary raises along with the laying on them of such alleged additional nongermane duties has not occurred. Their complaint is that the Legislature did not raise their salaries, not that it did.
The trial court in judgment issuing writ sought by appellees, cited eight cases. *1340 Three of these and the statute are discussed in appellees' brief. Most of these and other authorities are discussed in brief amicus curiae.
Phelps et al. v. Childers, State Auditor, 184 Okl. 421, 89 P.2d 782, 785 (1939) cited by the trial court, appellees and amicus curiae was an action by three Justices of the Supreme Court of Oklahoma seeking a writ of mandamus requiring payment of claims for salary increases granted by the Legislature contemporaneously with the imposition on them of duties allegedly not constituting a part of the ordinary duties of the office of the Supreme Court, after their having filed a written acceptance of the terms of the Act with the Secretary of State.
There the special Court, quoting from the case of Love, Attorney General v. Baehr, 47 Cal. 364, (also cited by the present trial court judgment) said:
The Legislature has no more power to compel the Attorney General to perform such service as a part of the duties of his office, than it has to compel the Superintendent of Public Instruction to take charge of the prison system.
* * * If, however, he has performed service which, under the Constitution, is wholly foreign to his office, and which is not and cannot become a part of his official duty as Attorney General, and if the Legislature has seen fit to compensate him for this unofficial service, there is no constitutional impediment to burden them from doing so.
The case of Finley, Probate Judge v. Territory ex rel. Keys, 12 Okl. 621, 73 P. 273, 281 (1903) relied upon in trial judgment, held that the probate judge of Kiowa County was entitled to retain from fees and compensation earned by his office for handling town site matters only the maximum compensation allowed him by law in spite of the jurisdiction conferred on the office by Congress and the Oklahoma Territorial Legislature. Judgment against the Judge was reversed, however, because although he had pleaded entitlement to reimbursement for certain expenses incurred in performance of duty, a demurrer to his answer had been sustained and judgment prematurely entered.
In the case of Bond v. Phelps, 200 Okl. 70, 191 P.2d 938 (1948) cited by the trial court, in appellees' brief and by amicus curiae, held a legislative act requiring the three members of the Corporation Commission to file with the Secretary of State a certificate of their willingness to perform certain duties and then perform the same by preparing an annotated compilation of all the oil and gas laws of Oklahoma and the general orders, rules and regulations the Commission had adopted pursuant thereto etc. and file same with the State Library as a public record, and granting the Commissioners a $2500.00 per annum "extra-duties raise" did not violate Article XXIII, § 10 of the Constitution.
The case of Groesbeck, Governor v. Fuller, Auditor General, 216 Mich. 243, 184 N.W. 870 (1921) relied on in lower court judgment, was a case wherein the Supreme Court of Michigan held that numerous duties placed on an administrative board composed of certain named officials pursuant to a statute giving them $2500 per year each in additional pay for performance of those duties did not violate their indicated constitutional provision.
The case of Moore v. Moore, 147 Va. 460, 137 S.E. 488 (1927), also relied upon in rendition of trial court judgment, was an original proceeding wherein the Supreme Court of Virginia upheld validity of an act of their Legislature imposing additional duties on the state auditor and giving him additional pay for performance of such duties, as against claim of alleged unconstitutionality.
In Breeden v. Nigh, Oklahoma, 441 P.2d 981 (1968) cited in trial court judgment, the Lieutenant Governor was made Chairman of the Oklahoma Industrial Development and Park Commission, given duties related but different from those performed as nonvoting member of predecessor Commission and granted a specific salary for performance *1341 of his new duties as Chairman held not to violate Art. VI Sec. 34 or Art. XXIII § 10 prohibitions against public officers' compensation, salaries or emoluments being changed, or increased during term of office.
The case of Board of Co. Com'rs of Creek County v. Bruce, 51 Okl. 541, 152 P. 125 (1915) cited in trial court judgment involved the matter of whether the County Clerk of Creek County should account for fees collected pursuant to applicable statute for the issuance of hunting licenses. The Clerk's salary was set by statute. This Court held he should account for the fees in spite of the extra responsibility having been put on him to handle the licenses.
In 67 C.J.S. Officers § 227  Additional or Extrinsic Duties p. 727, it is said:
Generally a person holding an office whose pay is fixed by law or regulation cannot be allowed to receive additional pay or compensation for performing additional duties, unless authorized by law. Thus, where the duties of an officer are increased by the addition of other duties germane to the office without provision for compensation, the officer must perform such duties without extra compensation because additional duties pertaining to the office have been assumed by him or imposed on him by the exigencies of the office. Services required of officers by law for which they are not specifically paid must be considered compensated by the fees allowed for other services.
On the other hand, an officer is not obliged, because his office is salaried, to perform all manner of public service without additional compensation. So, for services performed by request not part of the duties of his office, and which could have been as appropriately performed by any other person, he may recover a proper remuneration. In this connection, although services not required by the law cannot be classed as official duties, nevertheless, public policy requires that courts should not favor nice distinctions in order to declare certain acts of public officers extraofficial.
In a note to the above quotation from C.J.S. is cited our case of Broaddus v. Board of Co. Com'rs of Pawnee County, O.T., 16 Okl. 473, 479, 88 P. 250 (1906) which involved the claim of pre-statehood Pawnee County register of deeds for additional pay for performance of additional duties by reason of inclusion of unorganized territory (Osage Reservation with its 5,300 citizens, but not including 2,045 Indians which added to the 13,520 population of Pawnee County made a population of 18,820 to be served. The statute authorized pay raises for certain other officials but not the register of deeds. Denial by the Board of County Commissioners of the requested raise affirmed by the territorial district court in turn was affirmed by the Supreme Court of Oklahoma Territory. The Court quoted from the case of United States v. King, 147 U.S. 676, 13 S.Ct. 439, 37 L.Ed. 328 as follows:
When a statute increases the duties of an officer by the addition of other duties germane to the office, he must perform them without extra compensation
Also cited in a note to the C.J.S. quotation was the case of Anderson v. Hinman, 138 Mont. 397, 357 P.2d 895, 903. It was a 1960 case wherein the Supreme Court of Montana determined the Clerk of that Court should account to the state for statutory fees collected for furnishing certified, authenticated copies of the Court's legal opinions but need not charge statutory fees for furnishing unauthenticated, uncertified copies she voluntarily furnished. The Court further held the clerk and her living predecessors could retain monies they had received during the previous 75 years from West Publishing Co. at the rate of 25¢ per page for unauthenticated, unverified copies of such opinion despite being salaried officers, the voluntary furnishing of such copies being services which could have been as appropriately performed by any other person.
The trial court findings of fact, conclusions of law and judgment recites a stipulation *1342 of fact and lists respectively 18, 11, 8, 8 and 7 alleged non-germane duties of the appellees in the order listed in the caption and further characterizing the first two and fifth lists as "additional". Counsel for appellant Board states many of these duties were respectively required either by 1974 or prior to the 1978 amendment of the subject statute. Amicus Curiae brief particularizes some said to have been enacted effective this year.
This bit of information in the view of this writer is immaterial in view of other matters treated in this expression of individually-entertained views.
Public officers have no claim for official services rendered except where, and to the extent that, compensation is provided by law. 67 C.J.S. Officers, § 219, Right to compensation, a. In General, Note 51 citing authorities from a U.S. Court and 18 different state courts.
By our State Constitution, subject to the reservation of certain powers in the people, "The Legislative authority of the State" is vested in the Oklahoma "Legislature." (Art. V, § 1). "The authority of the Legislature" extends "to all rightful subjects of legislation * * *" (Art. V, § 36). "The Legislature" must "pass such laws as are necessary for carrying into effect the provisions of" the "Constitution." (Art. V, § 45).
In the 1912 opinion of this Court in the case of Ticer v. Holt, 35 Okl. 1, 128 P. 493, 495, we said:
An officer is not entitled to receive compensation from the state or county unless it is given to him by the Constitution or statute.
This Court there continued:
Where compensation is given to an officer by a constitutional or statutory provision, whether by salary or fees or commissions or otherwise, it is in full of all his official services, and he is not entitled to demand or receive any additional compensation from the public for any service within the line of his official duty, although his duties have been increased, or entirely new duties have been added since he assumed office, or, if his compensation consists of fees, although the service is one for which no fee is provided by law.
In Bennett v. State ex rel. Newer, 47 Okl. 503, 150 P. 198, 199, this Court said that salaries of county officers are, when not otherwise provided by law, to be fixed by the Legislature. See West Okla.Dig., Officers, Compensation and Fees, § 94, Right in general.
In Neumann v. Tax Commission of State of Oklahoma, Okl., 596 P.2d 530, 1979, we recently said the "Determination of question of constitutionality of statute, even if in serious doubt, will be avoided if a construction is fairly possible otherwise." Citing Crowell v. Benson, 285 U.S. 22, 525 S.Ct. 285, 76 L.Ed. 598, 619.
In the 1973 opinion of this Court in the case of Ruble v. Redden, 517 P.2d 1124, 1126, wherein was involved the question of whether a newspaper was published within Dewey County and was entitled to recognition as a publication authorized to publish legal notices under the applicable statute, we said:
Where there are two possible interpretations of a statute, one of which would render the statute unconstitutional, and another which would render the statute valid, the Court should adopt the construction which will uphold the statute.
Pyeatte v. Board of Regents of University of Oklahoma, 102 F. Supp. 407, 414, 416, affirmed 342 U.S. 936, 72 S.Ct. 567, 96 L.Ed. 696, involved the situation of plaintiff who owned a rooming house seeking to enjoin the University of Oklahoma from requiring students not housed in fraternity and sorority houses and a hall owned by a religious body to stay in housing facilities provided by university.
The Federal Court ruled that the regulation involved did not forbid complainant "to contract with any student. It merely creates a condition of affairs which renders the *1343 making of a related contract, lawful in itself, ineffective, and this is not fatal to its constitutionality."
The court continued:
A regulation can violate [the Equal Protection Clause] only if the group subjected to it has been arbitrarily selected and defined.
In the case of Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79, 31 S.Ct. 337, 340, 55 L.Ed. 369, certain rules were enumerated by which the equal protection contention is to be tested. These rules are as follows: `1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' (Emphasis added).
Lee Optical of Okla. v. Williamson, 120 F. Supp. 128, affirmed in part, reversed in part 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563, rehearing denied 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256 was a case where an Oklahoma statute dealing with the regulation of visual care was upheld, as against claims of unconstitutionality. The Supreme Court held that no invidious discrimination, violative of the equal protection clause of the Fourteenth Amendment, inhered in the statute's exemption from regulation of sellers' ready-to-wear glasses. At 348 U.S. 483, 488-489, 75 S.Ct. 461, 464-465, 99 L.Ed. 563, 572, 573, the U.S. Supreme Court said:
For protection against abuses by legislatures the people must resort to the polls, not to the courts.
* * * * * *
The legislature may select one phase of one field and apply a remedy there, neglecting the others. * * * The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say that that point has been reached here. For all this record shows, the ready-to-wear branch of this business may not loom large in Oklahoma or may present problems of regulation distinct from the other branch.
See West's Oklahoma Digest, Constitutional Law, § 48, Presumptions and construction in favor of constitutionality, for a dozen pages of references to Federal and State authorities under 8 sub-heads of general effect that statutes generally should be upheld if not shown to be clearly and palpably in violation of fundamental law.
In City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1117, 184 N.W. 823, 832 it is said:
There is no presumption against the validity of an act of the Legislature. On the contrary, all presumptions are in its favor, and a statute will not be held unconstitutional unless its contravention of constitutional guaranties is so clear, plain and palpable as to leave no reasonable doubt on the subject; and where the language is reasonably susceptible of different meanings, the courts will lean to that construction which is consistent with its validity.
Here there was no legislative enactment giving appellees a salary raise, of any character. Therefore they are not entitled to one.
I respectfully dissent.
I am authorized to state that LAVENDER, C.J., IRWIN, V.C.J., and OPALA, J., concur in the views expressed in the foregoing dissenting opinion.
*1344 IRWIN, Vice Chief Justice, dissenting:
Article XXIII, Section 10, of the Oklahoma Constitution provides:
"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment".
Similar Constitutional salary-change restrictions are discussed in 63 Am.Jur.2d Public Officers and Employees, sections 368-374. Section 368 provides:
"The general power of the legislature or other public body to alter the compensation of public officers is not infrequently limited by constitutional restrictions against changing the compensation of public officers or certain named officers while they are in office. * * *".
Section 370, explains the purpose of the salary-change restrictions in this language:
"The purpose of constitutional provisions against changing the compensation of a public officer during his term or incumbency is to establish definiteness and certainty as to the salary pertaining to the office, and to take from public bodies therein mentioned the power to make gratuitous compensation to such officers in addition to that established by law. Limitations of this type are designed to establish the complete independence of the officers affected by them, and to protect them against legislative oppression which might flow from party rancor, personal spleen, enmity, or grudge."
I am unable to find a single decision, either holding or even suggesting, that state constitutional salary-change restrictions would or might contravene the equal protection clause of the United States Constitution.
The legislature has adopted a statutory scheme expressly designed to give county officials a salary increase while at the same time respecting the fundamental purpose of Art. XXIII, Section 10. Since classification in question is reasonably related to these two legitimate state interests I can find no denial of equal protection.
I respectfully dissent.
I am authorized to state that LAVENDER, C.J., and WILLIAMS and OPALA, JJ., concur in the views herein expressed.
NOTES
[1] Fourteenth Amendment, United States Constitution.
[2] Norvell v. Illinois, 373 U.S. 420, 423, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963).
[3] Ferguson v. Skrupa, 372 U.S. 726, 732, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).
[4] McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964).
[5] Keys v. School District No. 1, 413 U.S. 189, 205, 93 S.Ct. 2686, 36 L.Ed.2d 548 (1973).
[6] Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 98 L.Ed. 660 (1954).
[1] Dunn v. Blumstein, 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274, 276 [1972].
[2] Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 41 L.Ed.2d 520 [1976].
[3] San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 [1973]; Massachusetts Bd. of Retirement v. Murgia, supra note 2.
[4] Massachusetts Bd. of Retirement v. Murgia, supra note 2; Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 [1970].
[5] Mathews v. De Castro, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 [1976].
[6] 19 O.S. 1971 § 180.61.
[7] 19 O.S.Supp. 1973 § 131(A) and (B).
[8] The basic salary law under attack.
[9] Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 [1978]; San Antonio School Dist. v. Rodriquez, supra note 3.